*In re* ANTHONY SMITH, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ANTHONY SMITH, Respondent-Appellant.)

Fifth District   No. 78-520

Opinion filed November 13, 1979.

John P. Coady, Public Defender, of Effingham, for appellant.

Robert F. A. Stocke, State's Attorney, of Louisville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Louise Simpson appeals the judgment of the Circuit Court of Clay County in which her minor son, Anthony Smith, was adjudicated a neglected child and made a ward of the court and which awarded custody of the son to Richard S. Laymon, guardianship administrator of the Department of Children and Family Services (the Department).

On August 22, 1977, Marilyn Wilkinson, on behalf of the Department, filed a petition alleging that Anthony Smith, age 8 years, was a neglected child because:

"(a) his behavior is injurious to his own welfare in that:

1. On 7-16-77 said minor broke into a grocery store and stole candy and soda.

2. On 8-10-77 mother of said minor requested that DCFS place said minor in foster care due to her inability to cope or control the minor.

3. During the past 12 months said minor has been a behavior problem in school and has been seen weekly by a therapist from the Mental Health Clinic, with no apparent improvement in behavior."

On the same date the petition was filed, the mother appeared in open court and consented to the minor being placed in the temporary custody of the Department until September 26, 1977, the date of the adjudicatory hearing. The court then informed the mother that she was entitled to an attorney at the upcoming hearing and was further informed that if she could not afford to hire an attorney, one would be appointed. The mother acknowledged that she had that right but chose not to exercise it.

At the adjudicatory hearing, Marilyn Wilkinson, a social worker for the Department, testified that approximately one year earlier both the minor's school and mother had informed her that they were having problems with Anthony. Apparently, upon receiving this information, the Department initiated counseling or therapy sessions which had little success. In July of 1977, after the minor was caught breaking into a store in Sailor Springs, the mother called Ms. Wilkinson and asked the Department to "take placement" of her child. The reason the mother gave for this request was that "she couldn't control him and she was concerned Anthony would really get into a lot of trouble." At the hearing, the mother presented no evidence but asked Ms. Wilkinson how long her child would be in foster care. Ms. Wilkinson responded that the Department was "trying to get him back in the home by next summer."

The court found that the minor was a neglected child and found that it was in his best interests that he be made a ward of the court. The court gave temporary care and custody of the child to Richard S. Laymon, guardianship administrator of the Department until June 26, 1978, the proposed date of the dispositional hearing.

The dispositional hearing was continued on the motion of the State and ultimately heard on November 16, 1978, approximately 14 months after the adjudicatory hearing. The first witness called by the State was Ms. Wilkinson, who reiterated much of her prior testimony but in greater detail. She testified that in November, 1976, she was called by the grade school principal regarding the minor's conduct. The principal informed her that the minor was "very negative"; had no friends; stole from the school and the community; lied even when the truth would serve him better; was having learning problems; had run away from home; and was very hostile. Ms. Wilkinson spoke with the mother, who did not know why the child behaved as he did. Weekly appointments for the mother and child were set up at the mental health clinic from November of 1976 until the following August. These services had only a temporary positive effect on the child and were largely unsuccessful. Shortly after the son had been caught in the candy store, the mother agreed with Ms. Wilkinson to have him placed in temporary foster care. Thereafter, the juvenile petition was filed.

Ms. Wilkinson testified that the minor has been in the same foster home since August 1977, where he has demonstrated remarkable improvement. The minor used to have nightmares and wet his bed on a regular basis. His nightmares have since ceased and his school behavior and skills have improved considerably. Ms. Wilkinson added that the minor had at first refused to visit his natural home and that the mother had likewise refused to see her son at the Department office. The mother finally changed her mind in February of 1978 and went to the office to

visit with her son for a period of one to 1½ hours, during which time no one ever sat down. The minor has since made a couple of home visits; however, he preferred to stay with his foster family and did not want to return to his home. After these home visits, the minor would start wetting his bed again. It was Wilkinson's opinion that the child has done well in foster care and would lose whatever progress he has gained by returning to his home.

Kay Goodman, the minor's foster parent, substantiated much of Ms. Wilkinson's testimony concerning the minor's improvement since joining her family. Janice Cook, a teacher specializing in learning disabilities, testified that the child had previously been unable to pay attention, was incapable of listening, was extremely unhappy and could not read at all. She indicated that within a year the minor was accepted by the other students in the school, is able to pay attention, is able to read, and most importantly appears happy.

The mother, who had not cross-examined any of the State's witnesses, chose to testify in her own behalf. She stated that her son had erratic eating habits and would often "run off" during meal times. She indicated she had been pregnant and "couldn't chase around all over the town all the time" after the minor. In conclusion, she stated, "I love Anthony and I want him back home."

After finding that the mother was unable or unwilling to train, care for and control her son, the court concluded that it would be in the best interests of the child to remove him from the custody of his parents. The court therefore placed the minor in the permanent custody of Richard Laymon, guardianship administrator of the Department.

On appeal, the mother first contends that the juvenile petition entitled "Petition—Neglected Child" fails to state a cause of action. It is her position that the allegations of the petition allege delinquency and a minor otherwise in need of supervision and not neglect. She therefore argues that the trial court did not have jurisdiction over this matter and that this cause must be reversed. The State responds that the mother initiated and consented to the filing of the petition and is now estopped from challenging its sufficiency. In addition, it argues that the petition, in any event, properly states a cause of action.

■■ Initially, we note that it was the mother who initiated the juvenile court process and acquiesced in and consented to the jurisdiction of the court. She admitted that she was unable to control her child; that her child had committed a criminal offense; and that she requested the Department to take temporary custody of him in July or August of 1977. Certainly, the mother can have no cause to complain of any possible defect in the petition whereby her own admissions she acknowledged, in effect, that her son was in need of supervision and could have been adjudged a

delinquent child and where the evidence at the various hearings demonstrated a substantial likelihood that the minor was neglected as well. It has long been held that a person may not ask a court to proceed in a given manner and then assign as error the ruling which he procured. (See *People v. Heard* (1947), 396 Ill. 215, 71 N.E.2d 321.) Thus, the mother, who admitted the various allegations of the petition and who invited and consented to a ruling that her son be made a ward of the court, is now prevented from asserting that the petition was insufficient in its present form. Compare *In re Ritchie* (1978), 58 Ill. App. 3d 1045, 374 N.E.2d 1292.

■ We note that, although the petition charged neglect, the factual allegations contained therein were more indicative of a child otherwise in need of supervision or a charge of delinquency. Nevertheless, this alleged defect was not fatal to the pending action. The evidence adduced at the hearings could support a finding that the child was neglected in addition to being in need of supervision and delinquent. Under section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—4), which defines neglect, the critical inquiry is whether the child is receiving the care necessary for his well being and not necessarily whether the parents have been neglectful. (*In re Gates* (1978), 57 Ill. App. 3d 844, 373 N.E.2d 568.) The facts established that the 8-year-old minor son was a constant bedwetter, was fed meals often on an erratic basis, had nightmares, stole from the community and school and was unable to read. From these findings, one could certainly infer that the son was not receiving the proper care necessary for his well-being. Thus, although the petition failed to charge neglect properly, the evidence presented at the hearings demonstrated that neglect existed by a preponderance of the evidence. In addition, the mother was definitely not prejudiced by this alleged formal defect where she, in essence, admitted that her son was not receiving proper care and where she sought the aid of the Department; nor could there be any element of surprise resulting from the alleged defect where upon a determination of either a neglected child or a child otherwise in need of supervision, as was proved and admitted by the mother in this case, the minor could be made a ward of the court.

■■ In proceedings of this kind, it is of paramount importance to protect the best interests of the child. (*In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872.) Certainly then, the presence of any defect in the pleadings, not prejudicing the rights of any parties, can be of little significance when the admissions of the mother, as substantiated by the other evidence presented at the hearings, clearly demonstrated that the child was neglected or otherwise in need of supervision.

The mother next contends that it was error for the court to fail to advise her of her rights and the nature of the juvenile court proceedings as

required by statute. (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(3).) She also argues that she did not knowingly waive counsel. The State responds that the trial court's substantial compliance with the admonitions required under the Juvenile Court Act was adequate, particularly where the mother was not prejudiced by any omission. It also argues that the mother's waiver of counsel was voluntary where she refused to accept appointed counsel and where she demonstrated little interest in the proceedings.

Subsection 3 of section 1—20 of the Juvenile Court Act provides that:
"At the first appearance before the court by the minor, his parents, guardian, custodian or responsible relative, the court shall explain the nature of the proceedings and inform the parties of their rights under the first 2 paragraphs of this Section." (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(3).)
The rights referred to in subsection 3 include the "right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records" and to be represented by the public defender or appointed counsel at the request of any party financially unable to employ counsel (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(1).) Although there is little or no authority as to what would constitute adequate admonitions under this section, it is clear that the statutory language imposes a mandatory duty on the trial court to inform the parties of the nature of the proceedings. (See *In re Giminez* (1974), 23 Ill. App. 3d 583, 319 N.E.2d 570.) In cases in which the State seeks an adjudication of neglect or a child otherwise in need of supervision, the parents, at the very minimum, must be informed that their child may become a ward of the State and that, upon such a determination, they may lose the custody of their child. In the absence of these basic admonitions, the other procedural rights, including the right to counsel, would have little meaning.

■ Applying these principles, it is clear that the failure of the trial court to give the mother the various admonitions set forth in section 1—20 did not constitute error insofar as the adjudicatory hearing is concerned. The mother had admitted to the Department on various occasions that she was unable to control her child and had consented to and agreed with the findings that her child was neglected or otherwise in need of supervision. As the mother's position at this hearing was not adverse to the one presented by the Department, the mother was not prejudiced by the court's failure to admonish her of all the procedural safeguards afforded a respondent at the adjudicatory phase.

■■ The failure, however, of the court to inform the mother at her first appearance that she could be deprived of the custody of her son at the dispositional hearing, we believe, was error. The mother consented to an

adjudication of neglect or a child otherwise in need of supervision and had consented to temporary custody of her child with the Department; but there was no showing in the record that she had agreed to the Department taking so-called permanent custody of her son nor was there any showing that she was aware such action could be taken. A review of the record reveals that during the adjudicatory hearing, the mother asked Ms. Wilkinson when her child would be returned to her. Ms. Wilkinson responded that the Department would attempt to place Anthony back in his natural home the following summer. The mother was thus led to believe that the deprival of custody was only temporary. When the Department thereafter sought "permanent" custody of the son at the dispositional hearing, the mother, taken by surprise, could only plead that she loved her son and wanted him back home.

It has long been held that a natural parent has the superior right to the society and custody of his child, but that such right must yield to the welfare and best interests of the child. (*In re Gonzales* (1975), 25 Ill. App. 3d 136, 323 N.E.2d 42.) Although there was evidence presented that the interests of Anthony would best be served by keeping him in foster care, the mother, apparently unaware that her son could be taken from her, was unprepared to challenge this evidence or to present evidence to the contrary. Accordingly, we believe that the mother could not have knowingly and intelligently exercised her various procedural rights, including the right to counsel, without being informed of the nature of the dispositional hearing. We therefore reverse and remand the case to the circuit court for a new dispositional hearing in accordance with the views expressed herein, expressing, however, no opinion on the proper disposition to be made.

■■ We must note that we do not approve of the 14-month delay between the adjudicatory and dispositional hearings, during which time the child was placed with a foster family. Had the mother realized that the Department would seek to continue this custodial arrangement and had she been represented by counsel, such delay and any prejudice resulting therefrom could have been prevented.

For the reasons stated, the judgment order of the Circuit Court of Clay County finding the minor a neglected child is affirmed. The judgment order awarding custody of the minor to the Department is reversed and remanded for further proceedings.

Affirmed in part; reversed in part; remanded.

JONES, P. J., and KASSERMAN, J., concur.