*In re* EVELYN MOORE, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JANICE MOORE BUCK, Respondent-Appellant.)

First District (4th Division)    No. 78-1675

Opinion filed August 21, 1980.

Ralph Ruebner and Susan Kaplan, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Alphonse R. Tomaso, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Respondent, Janice Moore Buck, appeals from an order finding her an unfit parent (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1) (b)) and granting permanent custody of her daughter, Evelyn Moore (Evelyn) to Evelyn's maternal grandmother (Mrs. Moore), also named Evelyn Moore. Ill. Rev. Stat. 1977, ch. 37, par. 705—7(1) (a).

On appeal, respondent contends: (1) the trial court's acceptance of her admission to the allegation of neglect violated her right to due process of law; (2) she was denied effective assistance of counsel; (3) reversible error occurred when the trial court unduly restricted cross-examination of a State's witness and direct examination of a defense witness; (4) the evidence of parental unfitness was not clear and convincing; and (5) the trial court abused its discretion by appointing the maternal grandmother as Evelyn's guardian.

Since we reverse and remand for a new adjudicatory hearing, we find it necessary only to address the first issue.

On August 5, 1977, a petition for adjudication of wardship on behalf of the minor Evelyn Moore, then five years old, was filed by Agnes Piszcek. The petitioner alleged that Evelyn was neglected by reason of an injurious environment (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1) (b)). The specific allegations of the petition were that on January 25, 1977, and August 2, 1977, the minor's maternal grandmother took the minor to Mercy Hospital where an examining physician found that Evelyn had a relaxed vaginal vault and the doctor believed the relaxation was due to frequent sexual assault. The petition also alleged that the minor had said that Donnie Buck, her stepfather, "lays on top of her and puts part of himself in her" and that the child's mother had failed to obtain medical care for the minor. The medical reports from Mercy Hospital were not attached to the petition nor made a part of the record.

A detention hearing was held the same day the petition was filed and a guardian ad litem was appointed to represent Evelyn. An assistant public defender accepted appointment to represent respondent Janice Moore Buck, Evelyn's mother. The court granted a "by agreement" order giving temporary custody to the maternal grandmother, and ordered a social investigation by the Department of Children and Family Services.

On November 1, 1977, the adjudicatory hearing was held. The following colloquy occurred:

"[Defense Counsel]: Your Honor, at this time, I hate to impose upon the Court, I would ask for perhaps five or ten minutes.

The State's Attorney and I believe is not ready either and we would both appreciate a few minutes grace.

[Asst. States Atty]: I would join in that. If we could pass the case for ten minutes.

The Court: We'll pass the case to let counsel talk.

*　*　*

The Court: All right, recall of the Evelyn Moore case.

Now are both sides ready to proceed?

[Asst. States Atty]: Yes, we are, Your Honor.

I have consulted with Ms. Nash and she has informed me that the parents wish to—the mother wishes to make her admission at this time.

[Defense Counsel]: Yes, Your Honor, as to environment injurious.

The Court: Admission of the mother as to environment? All right. We have previously defaulted the father by publication. Who is going to testify in this case?"

Agnes Cooper, a caseworker for the Illinois Department of Children and Family Services (DCFS), who was assigned to conduct a social investigation testified that another caseworker (who was no longer with the agency) investigated a report from Mercy Hospital that the minor, Evelyn, allegedly had been sexually molested. That worker did not, however, confront the person accused of the allegations. On August 3, 1977, a social worker from Mercy Hospital reported new allegations that Evelyn had been sexually molested. Cooper spoke with the mother, the stepfather, and Evelyn. Evelyn lived with her mother but sometimes resided with her maternal grandmother. Cooper never spoke with Evelyn about the allegations, but Evelyn appeared frightened when asked her feelings towards her stepfather.

Evelyn's maternal grandmother, Mrs. Moore, testified that she had taken Evelyn to the hospital in January and again in August. She also stated that sometime in January (she could not remember the date) Evelyn's pants were messy and Evelyn said "Don ate on her." Later in August 1977, while one of Mrs. Moore's daughters bathed Evelyn, Mrs. Moore observed blood dripping from Evelyn. Mrs. Moore said Evelyn told her, "No mama, no mama. He said he going to kill my mama." Mrs. Moore asked who said this and Evelyn said, "My daddy * * *." At the conclusion of this testimony, the court ruled, "All right then, that's enough. There will be a finding of neglect * * * . Let the record indicate environment injurious * * * and adjudication of wardship * * * ."

On May 24, 1978, at the dispositional hearing, respondent was represented by new counsel. A "by agreement" dispositional plan with moni-

toring and counseling services for the family was proffered by respondent. Because the clinical evaluation of respondent's psychiatrist differed from the evaluation of the State's psychiatrist, the court refused to accept the agreed order and a contested hearing was held. At the close of the hearing, despite recommendations from the assistant state's attorney, the assistant public defender, the guardian ad litem, and the DCFS caseworker, to not place Evelyn in the custody of her maternal grandmother, Mrs. Moore, the court did so. This appeal followed.

OPINION

Respondent contends she was denied due process when the trial court failed to explain to her the nature of the adjudicatory proceedings and this failure violated section 1—20 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—20). Respondent urges that it was incumbent on the trial court to explain the nature of the proceedings prior to accepting counsel's admission on her behalf as to environment injurious (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(b)) and prior to adjudicating Evelyn a ward of the court.

■■ Section 1—20, entitled "Rights of parties to the proceedings," provides:

"(1) * * * the minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel. * * *

* * *

(3) At the first appearance before the court by the minor, his parents, guardian, custodian or responsible relative, the court shall explain the nature of the proceedings and inform the parties of their rights under the first 2 paragraphs of this Section."

While under the statute it is clearly error if the court fails to admonish the parents of their rights, it does not follow that such error would require reversal in every case. When, however, the State seeks an adjudication of neglect and the court has failed to admonish the parents "that their child may become a ward of the State and that, upon such a determination, they may lose the custody of their child" (*In re Smith* (1979), 77 Ill. App. 3d 1048, 1053, 397 N.E.2d 189, 193), a new adjudicatory hearing is required where the parent enters into an admission of neglect and it is not apparent that the parent was aware of his or her rights or that the proceedings could result in the loss of custody of the child.

In the instant case, there is nothing in the record to indicate that prior

to the time respondent's admission was entered, she had been informed that she had the "right to be heard" or present evidence material to the proceedings. (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(1).) Thus, we are unable to determine whether respondent knew she had the right to contest the allegations of neglect and adjudication of wardship.

We also are unable to determine from this record whether respondent was aware of the nature of the adjudicatory proceeding: that she could lose permanent custody of her child; or whether she was aware of the consequences of her admission: that a finding of neglect gives the court jurisdiction of the minor who then becomes subject to the dispositional powers of the court. (Ill. Rev. Stat. 1977, ch. 37, par. 701—18.) These powers include granting custody of the minor to the parents, a guardian, or a legal custodian (Ill. Rev. Stat. 1977, ch. 37, par. 705—2(1) (c)) or "plac[ing] him under the guardianship of a probation officer; * * * commit[ting] him to an agency for care or placement * * *" or " * * * commit[ting] him to the Department of Children and Family Services for care and service. * * *" (Ill. Rev. Stat. 1977, ch. 37, par. 705—7(1) (b), (c), (f).) Thus, after the adjudication of wardship, the parents may lose permanent custody of their child and retain only "residual parental rights." Ill. Rev. Stat. 1977, ch. 37, par. 701—16.

Here the record fails to indicate that respondent had been informed of the nature of the proceedings. Neither the trial court nor counsel addressed respondent as to her rights at any time during the proceedings or prior to the adjudication of wardship. Similarly, the petition for adjudication of wardship failed to apprise respondent of the possibility of losing permanent custody of her child; the petition only requested temporary custody and "other appropriate relief." Compare *People ex rel. Jones v. Jones* (1976), 39 Ill. App. 3d 821, 350 N.E.2d 826.

Indeed, the record of the proceedings prior to the adjudication shows only a "by-agreement" temporary custody order entered at the detention hearing and later, at the adjudication hearing, the assistant state's attorney's statement to the court that "the mother wishes to make her admission at this time." The assistant public defender, who was not the same counsel who had represented respondent at the detention hearing, responded "yes, * * * as to environment injurious." The court accepted the admission without addressing respondent or determining whether counsel had addressed respondent or advised her of the nature of the proceedings.

■■■ Accordingly, we believe that, under the circumstances of this case, a new adjudicatory hearing is necessary since there is nothing of record which would allow us to conclude that the mother was aware of the nature of the proceedings or her rights under section 1—20 (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(1), (2), (3)), and we will not presume such an

awareness from the mere fact that respondent was represented by counsel at the detention and adjudicatory hearings. See *In re Starks* (1978), 60 Ill. App. 3d 934, 377 N.E.2d 590.

■■ The State, however, argues that the finding of neglect and adjudication of wardship is not a disposition of the case and therefore does not obligate the court to remove the child from the parents at the dispositional hearing. Thus, the State asserts, lack of information at the adjudicatory stage is not prejudicial. We reject this argument, however, since we believe the admonishment of rights and explanation of the proceedings is clearly necessary where the serious admission of neglect is entered and where that admission will necessarily be considered in the dispositional phase of the proceeding. If the parent is not aware of the right to contest the petition's allegations of neglect, an admission of neglect might well be prejudicial, particularly where the parent did not know and was not informed that permanent custody of the child could be lost at the dispositional hearing as a result of that very admission.

While we are cognizant that the primary concern expressed by the Juvenile Court Act is the best interest of the child (*In re Gonzales* (1975), 25 Ill. App. 3d 136, 323 N.E.2d 42), the statute also expressly delineates the procedural rights of the party-respondent and " * * * imposes a mandatory duty on the trial court to inform the parties of the nature of the proceedings. [Citations.]" (*In re Smith* (1979), 77 Ill. App. 3d 1048, 1053, 397 N.E.2d 189, 193.) Under the circumstances of this case, we hold the court's failure to comply with section 1—20 necessitates a reversal and a remand of the cause for a new adjudicatory hearing. Custody of the minor pending the outcome of the hearing is to remain with the present court appointed custodian or as the trial court shall otherwise determine pending the completion of the proceedings.

Reversed and remanded.

JIGANTI and ROMITI, JJ., concur.