(No. 93595.—

*In re* ANDREA F., a Minor (The People of the State of Illinois *et al.*, Appellants, v. T.F., Appellee).

*Opinion filed December 18, 2003.*

McMORROW, C.J., joined by FREEMAN, J., dissenting.
KILBRIDE, J., also dissenting.

James E. Ryan, Attorney General, of Springfield, and
Paul A. Logli, State's Attorney, of Rockford (Joel D. Ber-
tocchi, Solicitor General, John P. Schmidt, Assistant At-
torney General, of Chicago, and Norbert J. Goetten,
Martin P. Moltz, David A. Bernhard and Paul Benjamin
Linton, of the Office of the State's Attorneys Appellate
Prosecutor, of Elgin, of counsel), for the People.

Kathryn Bischoff, of Rockford, for appellee.

Charles P. Golbert and Allison D. Ortlieb, of the Cook
County Office of the Public Guardian, of Chicago, for
*amicus curiae* Patrick T. Murphy, Cook County Public
Guardian.

JUSTICE RARICK delivered the opinion of the court:
The State and the Department of Children and Fam-
ily Services (DCFS) appeal from a judgment of the appel-

late court reversing the circuit court's termination of
T.F.'s parental rights. The circuit court of Winnebago
County adjudicated T.F. an unfit parent, terminated his
parental rights to his daughter, Andrea, and appointed
DCFS guardian of Andrea with the power to consent to
adoption. The appellate court reversed, finding that the
circuit court failed to comply with section 1—5(3) of the
Juvenile Court Act of 1987 (Act) (705 ILCS 405/1—5(3)
(West 1996)) because it did not admonish T.F. that if he
should fail to cooperate with the DCFS, comply with the
terms of the service plans, and correct the conditions
that required Andrea to be in its care, he risked termina-
tion of his parental rights. The appellate court remanded
the cause to the circuit court for a new dispositional hear-
ing pursuant to section 2—22 of the Act. 327 Ill. App. 3d
1072. This court granted leave to appeal. 177 Ill. 2d R.
315. For the following reasons, we reverse the judgement
of the appellate court and affirm the judgment of the
circuit court.

On November 6, 1995, the State filed separate peti-
tions of abuse and neglect with respect to Andrea and
S.H., T.F.'s daughter and stepdaughter, respectively. In
the first petition, the State alleged in count I that T.F.
had sexually abused Andrea, and alleged in count II that
T.F. had neglected Andrea, in that he had placed her at
risk of harm by sexually abusing S.H. In the second peti-
tion, the State alleged in count I that T.F. had sexually
abused S.H., and alleged in count II that T.F. had
neglected S.H., in that he had placed her at risk of harm
by sexually abusing Andrea.

At his first appearance on December 1, 1995, the
circuit court admonished T.F. that if either allegation
were found to be true, or if the court found that the
parents were unable to adequately care for, protect, train,
or discipline the children, the children could be declared
wards of the court, removed from the custody of one or

both parents, and placed under the guardianship of DCFS. The trial court also admonished T.F. as to his rights under sections 1—5(1) and 1—5(2) of the Act. T.F. was not specifically advised that his parental rights could be terminated if he should fail to cooperate with DCFS, comply with the terms of the service plans, or correct the conditions that caused Andrea to be in DCFS's care.

The adjudication hearing began on May 2, 1996, and continued through July 2, 1996, at which time the trial court found that the allegations of each petition had been proved by a preponderance of the evidence. Following a dispositional hearing on July 30, 1996, the trial court declared Andrea and S.H. to be wards of the court. C.J., Andrea's mother, was given custody and guardianship of Andrea, and both parents were ordered to cooperate with DCFS and participate in any counseling DCFS recommended. Again, T.F. was not specifically told that his parental rights could be terminated if he should fail to cooperate with DCFS. T.F. appealed.

The appellate court found that while there was sufficient evidence to support the finding that T.F. had sexually abused S.H., there was insufficient evidence to support the finding that T.F. had sexually abused Andrea. Thus, in Andrea's case, the appellate court affirmed the judgment on count II (neglect based on an injurious environment resulting from sexual abuse of S.H.), but reversed the judgment on count I (sexual abuse of Andrea). In S.H.'s case, the appellate court reversed the judgment on count II (neglect based on an injurious environment resulting from sexual abuse of Andrea) but affirmed the judgment on count I (sexual abuse of S.H.). *In re A.F.*, No. 2—96—1050 (1997) (unpublished order under Supreme Court Rule 23).

T.F. subsequently filed a motion to modify the order

of disposition. Following a hearing on May 11, 1998,[1] the trial court entered a modified order of adjudication finding that Andrea was neglected, in conformity with the decision of the appellate court. The order of disposition was not modified. In July 1998, DCFS was given custody and guardianship of Andrea.

On August 11, 2000, the State filed a petition to terminate the parental rights of T.F. and C.J. with respect to Andrea and to appoint DCFS as guardian of Andrea with the power to consent to adoption. The petition alleged that T.F. and C.J. were unfit parents in that: one, they had failed to maintain a reasonable degree of interest, concern or responsibility as to Andrea's welfare; two, they had substantially neglected Andrea in a continuous or repeated manner; and three, they had failed to make reasonable efforts to correct the conditions that were the basis of the removal or to make reasonable progress toward the return of Andrea to them within nine months after an adjudication of neglect or abuse.

Immediately prior to the hearing on the petition, C.J. surrendered her parental rights to Andrea. Following the hearing, the trial court found that the State had demonstrated by clear and convincing evidence that T.F. had failed to maintain a reasonable degree of interest, concern or responsibility for Andrea, and had failed to make reasonable efforts to correct the conditions that led to Andrea's removal and failed to make reasonable efforts toward her return. The trial court found the evidence insufficient to prove that T.F. had substantially neglected Andrea in a repeated or continuous manner. Following a best interests hearing on September 6, 2001, the trial court terminated T.F.'s parental rights and authorized the DCFS to consent to her adoption. T.F. appealed.

[1]The appellate court incorrectly states that this took place on October 11, 1998.

The appellate court reversed, holding that the circuit court's failure to admonish T.F. that his failure to cooperate with DCFS, comply with the service plans, or correct the conditions that caused Andrea to be in DCFS's care could result in the termination of his parental rights violated section 1—5(3) of the Act and deprived T.F. of a fair determination of his parental rights. The appellate court acknowledged that under the version of section 1—5(3) in effect at the time of the initial adjudication of neglect and abuse, and at the time of the order of disposition, there was no specific requirement that courts admonish parents regarding the termination of their parental rights. The court concluded, however, that the rights set forth in section 1—5(3) would be "meaningless if the parents [were] unaware of them." 327 Ill. App. 3d at 1076. Noting that parents have a fundamental liberty interest in the care, custody, and control of their children, the appellate court concluded that "the legislature intended that the trial courts inform the parents of all of their rights to the proceedings, including what they must do to retain their parental rights to their children" (327 Ill. App. 3d at 1077), and that while "the primary concern expressed by the Act is the best interest of the child *** the due process right of the parent outweighs our desire for conclusiveness" (327 Ill. App. 3d at 1079).

T.F. also argued that the adjudication of unfitness was contrary to the manifest weight of the evidence and that the trial court violated his fifth amendment right not to incriminate himself because the findings of unfitness were improperly based on his refusal to admit that he had sexually abused S.H. The appellate court declined to address these arguments, other than to note that on remand DCFS could not compel therapy treatment that would require T.F. to incriminate himself and that the trial court could not base its decision to terminate parental rights on T.F.'s refusal to admit to a crime. 327 Ill. App. 3d at 1080.

Prior to addressing the merits of the appellant's argument, we must consider whether this appeal should be dismissed as moot. At oral argument, counsel for the State disclosed that several days earlier, T.F. had executed a surrender of his parental rights.

The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001). An appeal is considered moot where it presents no actual controversy or where the issues have ceased to exist. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997), quoting *First National Bank of Waukegan v. Kusper*, 98 Ill. 2d 226, 233 (1983), quoting *People v. Redlich*, 402 Ill. 270, 278-79 (1949). The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. *In re A Minor*, 127 Ill. 2d 247, 255 (1989). A reviewing court can take judicial notice of events which, while not appearing in the record, disclose that an actual controversy no longer exists, rendering the issue before the court moot. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116-17 (1992). Where the issue or issues before the court have become moot, the appeal will generally be dismissed.

Notwithstanding these general rules, a reviewing court may nevertheless review an otherwise moot issue pursuant to the public interest exception to the mootness doctrine. *Richardson*, 179 Ill. 2d at 256. The criteria for application of the public interest exception are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur. *In re A Minor*, 127 Ill. 2d at 257.

The issue in this case clearly falls within the public interest exception. The question of whether circuit courts were required under former section 1—5(3) of the Act to admonish parents that they risked termination of their parental rights if they failed to cooperate with DCFS is one of public importance. Further, the circumstances are likely to recur because, as the State points out, the appellate court's decision threatens to disturb a great number of dispositions under the Act where the initial court appearance, adjudicatory hearing, or dispositional hearing occurred prior to January 1, 1998. For this reason, authoritative guidance from this court is required.

This determination does not conflict with our pervious holdings in *In re Adoption of Walgreen*, 186 Ill. 2d 362 (1999), *In re India B.*, 202 Ill. 2d 522 (2002), and *In re J.B.*, 204 Ill. 2d 383 (2003).

In *Walgreen*, Charles and Kathleen Walgreen filed a petition to adopt two of their grandchildren, arguing that the children's biological mother, Loren, was unfit. DCFS was granted leave to intervene. The trial court denied the Walgreens' petition based on its finding that several provisions of the Adoption Act were unconstitutional. Subsequent to the Walgreens' direct appeal to this court, Loren consented to the adoption. Loren and the Walgreens agreed to dismissal of the appeal on mootness grounds, but DCFS argued that this court should address the issues raised in the case in order to provide guidance for future cases. We declined to do so, stating that a court should not resolve questions merely for the sake of setting precedent to govern potential cases. With respect to the public interest exception, we concluded that the exception did not apply. We acknowledged that the question of whether the challenged statutory provisions were constitutional was one of public importance, but found no need for authoritative determination for the future

guidance of public officers because various panels of the appellate court had considered similar constitutional challenges to the provision in question and had consistently found them to be constitutional. *Walgreen*, 186 Ill. 2d at 364-66.

In the present case, by contrast, it was the appellate court, rather than a circuit court, which held in a written opinion that the pre-January 1, 1998, version of section 1—5(3) required trial courts to admonish parents that they had to cooperate with DCFS and comply with the service plans or risk termination of their parental rights. This is an incorrect statement of the law which, if allowed to stand, will, as the State has argued, disturb a great number of dispositions under the Act where the initial court appearance, adjudicatory hearing, or dispositional hearing occurred prior to January 1, 1998.

In *In re India B.*, the circuit court entered a default judgement terminating the parental rights of Denise S. and appointing DCFS as guardian with the power to consent to adoption. Her motion to vacate the default order was denied and the children were subsequently adopted. Denise S. appealed, arguing that she was denied due process and the right to counsel when the circuit court barred her from presenting either a defense or further pleadings as a sanction for failing to appear at her parental fitness hearing. The appellate court affirmed (*In re India B.*, No. 1—99—3433 (unpublished order under Supreme Court Rule 23)), and we granted leave to appeal. In response to the State's motion to dismiss the appeal as moot, Denise S. argued that the public interest exception applied because there was conflicting appellate authority on the appropriate application of Supreme Court Rule 219(c) sanctions in cases involving termination of parental rights. Without undertaking an examination of her argument on appeal, we noted that each appellate case she cited was decided on its own peculiar

facts, and that the cases were not irreconcilably conflicting. *In re India B.*, 202 Ill. 2d at 543.

*In re India B.* is clearly distinguishable from the present case. The only grounds for invoking the public interest exception advanced by the appellant was that there was conflicting appellate authority. This court determined that the appellate cases cited by the appellant were not in conflict. Thus, appellant failed to show that there was a need for an authoritative determination by this court for future guidance. In the present case, the State's argument for invoking the public interest exception is not based on the need to resolve conflicting precedent.

Finally, in *In re J.B.*, Wanda B. appealed the circuit court's finding that she was unfit and its termination of her parental rights. During the pendency of her appeal, the children were adopted. In her appeal to this court, she argued that section 1(D)(q) of the Adoption Act was unconstitutional. In response to the State's motion to dismiss the appeal as moot, Wanda B. argued that the public interest exception applied. Finding that we were presented with the same scenario as in *In re India B.*, we reached the same conclusion—the public interest exception did not apply. *In re J.B.*, 204 Ill. 2d at 387-89.

As with *Walgreen* and *India B.*, we find that *In re J.B.* is distinguishable and does not preclude us from invoking the public interest exception to the mootness doctrine. We now turn to an analysis of the merits of the appellant's arguments.

The question of whether the trial court was required by section 1—5(3) to admonish T.F. that he risked losing his parental rights if he should fail to cooperate with DCFS is one of statutory interpretation. The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *In re C.W.*, 199 Ill. 2d 198, 211 (2002). Legislative intent is best ascertained by

examining the language of the statute itself. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). Where the language is clear and unambiguous, there is no need to resort to aids of statutory construction, and courts must give effect to the statute as written, without reading into it exceptions, limitations, or conditions that the legislature did not express. *In re D.L.*, 191 Ill. 2d 1, 9 (2000), quoting *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 378 (1996), quoting *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994).

Prior to January 1, 1998, section 1—5 of the Act provided in pertinent part:

"Rights of parties to proceedings.

\* \* \*

(3) \*\*\* At the first appearance before the court by the minor [and] his parents \*\*\* the court shall explain the nature of the proceedings and inform the parties of their rights under the first 2 paragraphs of this Section." 705 ILCS 405/1—5(3) (West 1996).

The clear and unambiguous language of the version of section 1—5(3) in effect at the relevant times required courts to inform the parties of their rights under the first two paragraphs of that section. Paragraph 1 provided that the minor and his parents had the right to be present, to be heard, to present evidence, to cross-examine witnesses, to examine court files and records, and to be represented by counsel. 705 ILCS 405/1—5(1) (West 1996). Subsection (2) provided that any current or previously appointed foster parent or representative of an agency or institution interested in the minor had the right to notice, to be heard, and, in certain circumstances, to intervene. 705 ILCS 405/1—5(2) (West 1996). Nothing in either subsection (1) or (2) provided that parents had the right to be admonished that they risked having their parental rights terminated if they failed to cooperate with DCFS. Thus, prior to January 1, 1998, section

1—5(3) did not require trial courts to admonish parents that they risked having their parental rights terminated if they failed to cooperate with DCFS.

Section 1—5(3) was amended, effective January 1, 1998, to require trial courts to admonish parents that they "must cooperate with [DCFS], comply with the terms of the service plans, and correct the conditions that require[d] the child to be in care, or risk termination of their parental rights" (705 ILCS 405/1—5(3), 2—21(1), 2—22(6) (West 1998)). This admonishment is required on three occasions: at the first appearance if the child is alleged to be abused, neglected, or dependent; following the adjudication hearing if the child is adjudicated to be abused, neglected or dependent; and following the dispositional hearing if the child is declared a ward of the court. 705 ILCS 405/1—5(3) (West 1998). In the present case, all three events took place prior to January 1, 1998, the effective date of the amendment. Thus, the amended version of section 1—5(3) did not apply to T.F.

Because section 1—5(3) did not, prior to January 1, 1998, require trial courts to admonish parents that they risked termination of their parental rights if they failed to cooperate with DCFS or comply with the terms of the service plans, the trial court in the present case did not violate section 1—5(3) by failing to give such an admonishment to T.F.

In support of its position, the appellate court noted that the amended version of section 1—5(3) was in effect at the time of the hearing on the motion to modify the order of disposition. This is not, however, one of the three points at which the amended statute requires the admonishment. Moreover, the trial court did not modify the order of disposition, but rather modified its order of adjudication to find that Andrea was neglected, in accordance with the appellate court's order. In so doing,

the trial court heard no new evidence and made no new findings, and the original finding of neglect remained undisturbed. Under such circumstances, the trial court was not required by the amended version of section 1—5(3) to admonish T.F. at the May 11, 1998, hearing on the motion to modify.

As noted above, the appellate court acknowledged that under the version of section 1—5(3) in effect at the time of the dispositional order, there was no specific requirement that trial courts admonish parents concerning termination of their rights. After noting that the dispositional hearing serves a crucial role in allowing the trial court to balance the parents' fundamental liberty interest in raising their children with the state's obligation to protect the best interests of the child, however, the appellate court concluded that the legislature intended that trial courts must inform parents of all of their rights to the proceedings, including what they must do to retain their rights to their children. 327 Ill. App. 3d at 1077. Thus, the court ruled that, as a matter of due process, section 1—5(3)'s requirement that T.F. be informed of the nature of the proceedings included the right to be admonished that he risked termination of his parental rights if he failed to cooperate with DCFS or to comply with the terms of its service plans. 327 Ill. App. 3d at 1079. In support of its position, the court relied upon *In re Moore*, 87 Ill. App. 3d 1117 (1980), and *In re Smith*, 77 Ill. App. 3d 1048 (1979).

In *Smith*, L.S. consented to having her child, A.S., placed in the temporary custody of DCFS until an adjudicatory hearing could be held. The trial court admonished L.S. that she was entitled to have an attorney at that hearing. L.S. acknowledged that she had such a right, but chose not to exercise it. Following the adjudicatory hearing, the trial court found A.S. to be neglected and placed him in the temporary custody of

DCFS, pending the dispositional hearing. Following that hearing, the trial court removed A.S. from the custody of his parents and placed him in the permanent custody of DCFS. *In re Smith*, 77 Ill. App. 3d at 1049-52.

L.S. appealed, arguing, *inter alia*, that the trial court failed to advise her of her rights and the nature of the proceedings, as required by subsection (3) of section 1—20 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—20(3)), which provided that at their first appearance, parents were to be informed of the nature of the proceedings and their rights under subsections (1) and (2) of section 1—20. The appellate court held that while there was little authority as to what would constitute adequate admonitions under section 1—20, the statutory language clearly imposed a mandatory duty on the trial court to inform the parties of the nature of the proceedings and that, at a minimum, this included a duty to admonish parents that the child may become a ward of the court and that they may lose custody of their child. Applying this principle to the case before it, the court concluded that the trial court erred in failing to admonish L.S. at her first appearance that she could lose custody of her son. The court noted that there was no showing in the record that L.S. had agreed to DCFS's taking permanent custody of her son, or that she was even aware that such action was possible. In fact, the court further noted, a DCFS social worker had told L.S. at the adjudicatory hearing that DCFS wanted to return her son to her the following summer. Thus, the court concluded that in the absence of any admonitions as to the nature of the dispositional proceedings or that she could lose permanent custody of her son, L.S. was unprepared to challenge the State when it sought permanent custody at the dispositional hearing. *In re Smith*, 77 Ill. App. 3d at 1053-54.

In *Moore*, the trial court found E.M. to be neglected

and, following a dispositional hearing, awarded custody to E.M.'s grandmother. J.B., E.M.'s mother, appealed, arguing that she was denied due process where the trial court failed to explain to her the nature of the adjudicatory proceedings, and that such failure violated section 1—20 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—20). The appellate court held that because the record did not affirmatively demonstrate that J.B. was aware of the nature of the adjudicatory proceedings, her rights under section 1—20 were denied. Citing *Smith*, the court in *Moore* held that a new adjudicatory hearing is required when it is not apparent that the parent was aware of his or her rights or that the proceedings could result in the loss of custody of the child. *In re Moore*, 87 Ill. App. 3d at 1120-22.

Neither *Smith* nor *Moore* support the appellate court's position. In *Smith*, L.S. was not represented by counsel and had been led to believe that her loss of custody was temporary. Because she was not admonished as to the nature of the dispositional proceedings, she was unable to knowingly and intelligently exercise her various procedural rights. In *Moore*, the court held that a new adjudicatory hearing was required because it was not apparent from the record that J.B. was aware of her rights or that she could lose custody of her child. These cases stand only for the proposition that in proceedings under the Act, parents must be made aware that they could lose custody of their children and that their children could become wards of the court. They do not support the proposition for which the appellate court cited to them: that parents must be specifically admonished that they must cooperate with DCFS and comply with the terms of the service plans.

In any event, we find that in this case T.F. was not denied due process by the court's failure to give the admonishment in question.

A parent has a fundamental due process right to the care, custody and control of his or her children, but that right is subject to termination. *In re M.H.*, 196 Ill. 2d 356, 362-63 (2001). Because a parental rights termination proceeding implicates a fundamental liberty interest, the procedures employed in this type of proceeding must comply with the requirements of procedural due process. *Santosky v. Kramer*, 455 U.S. 745, 749, 71 L. Ed. 2d 599, 604, 102 S. Ct. 1388, 1392 (1982); *In re M.H.*, 196 Ill. 2d at 363. In *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), the Supreme Court identified three factors to be considered in determining what due process requires in proceedings implicating fundamental liberty interests: (1) the private interest implicated by the official action; (2) the risk of an erroneous deprivation of that interest through the proceedings used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903. These same factors are considered in resolving what procedural safeguards are required by the due process clause of the Illinois constitution. See *People v. Gerke*, 123 Ill. 2d 85, 90 (1998). Although the issue in *Mathews* was whether the due process clause of the fifth amendment required an evidentiary hearing prior to the termination of a recipient's Social Security disability payments, both the Supreme Court and this court have applied the *Mathews* factors to cases involving the termination of parental rights. *Lassiter v. Department of Social Services*, 452 U.S. 18, 31, 68 L. Ed. 2d 640, 652, 101 S. Ct. 2153, 2161-62 (1981); *In re M.H.*, 196 Ill. 2d at 363-64.

Applying the *Mathews* factors to the facts of the present case, we conclude that T.F. was not denied due

process by the trial court's failure to specifically admonish him that he risked termination of his parental rights if he failed to cooperate with DCFS or comply with the terms of the service plans. This court has previously held a parent's right to the care, custody and control of his or her child is a fundamental right that courts will not terminate lightly. *In re Paul*, 101 Ill. 2d 345, 351-52 (1984). We find that the risk that T.F. was erroneously deprived of that interest as a result of the failure to give the admonishment in question is minimal because the record amply demonstrates that T.F. was aware of the need to cooperate with DCFS and that his parental rights could be terminated.

The record reveals that T.F. was admonished at his first appearance that his children could be declared wards of the court and removed from his custody. At the conclusion of the adjudicatory hearing, that trial court expressed its concern about "termination proceedings." Following the dispositional hearing, the court ordered T.F. to cooperate with DCFS and to participate in any and all counseling services DCFS recommended. At a hearing on February 25, 1997, T.F.'s attorney argued that it would be unfair "to terminate his rights" because he refused to admit in sex offender counseling that he had sexually abused his children. Thus, the record in the present case clearly demonstrates that T.F. was well aware of his need to cooperate with DCFS and that termination of his parental rights was a possibility.

Appellants also argue that, assuming this cause is remanded to the trial court, the appellate court erred in holding that T.F. could not be required to admit in sexual abuse counseling that he sexually abused S.H. because the applicable statute of limitations for any such criminal offense has expired. They further argue that the finding of unfitness was not contrary to the manifest weight of the evidence. Given our disposition of appellants'

principal argument, we need not address these arguments.

We hold that, prior to January 1, 1998, section 1—5(3) did not require the trial courts to admonish parents that they risked having their parental rights terminated if they failed to cooperate with DCFS or comply with the terms of the service plans. For the foregoing reasons, we vacate the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment vacated;*
*circuit court judgment affirmed.*

CHIEF JUSTICE McMORROW, dissenting:

The majority purports to hold that "prior to January 1, 1998, section 1—5(3) did not require the trial courts to admonish parents that they risked having their parental rights terminated if they failed to cooperate with DCFS or comply with the terms of the service plans." 208 Ill. 2d at 167. However, this is not, in fact, what the majority decides. The majority merely determines that, under the circumstances presented in the case at bar, T.F.'s due process rights were not violated by the trial court's failure to admonish him of the need to cooperate with DCFS. The majority fails to provide any analysis on the broader issue which it claims to be addressing under the public interest exception to the mootness doctrine. Because the majority does not reach the issue which is its only justification for assuming jurisdiction over this appeal, the public interest exception is not satisfied. For this reason, I respectfully dissent.

In the case at bar, the circuit court granted the State's petition to terminate the parental rights of Andrea's father, T.F., after finding that T.F. was unfit because he: (1) failed to maintain a reasonable degree of interest, concern or responsibility for Andrea, and (2) failed to make reasonable efforts to correct conditions which led to Andrea's removal or to make reasonable

progress toward Andrea's return within the nine months following adjudication. The appellate court reversed the termination order, holding that the circuit court violated section 1—5(3) of the Juvenile Court Act and T.F.'s due process rights because the court failed to admonish T.F. at the time of T.F.'s first appearance before the court, at the time of Andrea's adjudication, and at the time of the dispositional hearing that his parental rights could be terminated if he should fail to cooperate with DCFS, comply with DCFS service plans, or correct conditions that caused Andrea to be removed from T.F.'s custody. We granted the State's petition for leave to appeal to decide whether the failure to give the particular admonishments at issue here was a statutory violation which implicated constitutional rights.

Before 1998, section 1—5(3) of the Act required courts to "explain the nature of the proceedings and inform the parties of their rights under the first two paragraphs of this Section." 705 ILCS 405/1—5(3) (West 1996). The rights afforded by these paragraphs included the right to be present, the right to be heard, the right to present evidence, the right to cross-examine witnesses, the right to examine court files and records, and the right to be represented by counsel. 705 ILCS 405/1—5(1) (West 1996). Section 1—5(3) was amended by Public Act 90—28, effective January 1, 1998. It requires the circuit court to admonish parents at the time of their first appearance, upon adjudication, and following the dispositional hearing, that they "must cooperate with [DCFS], comply with the terms of the service plans, and correct the conditions that require the child to be in care, or risk termination of their parental rights" 705 ILCS 405/1—5(3), 2—21(1), 2—22(6) (West 1998).

In the case at bar, all of the relevant hearings—first appearance, adjudication and disposition—took place prior to January 1, 1998. The appellate court agreed that

the pre-amended version did not *explicitly* require the admonishments at issue here, but held that the statute *implicitly* required the court to give these admonishments as part of its duty to inform parents of their rights regarding the "nature of the proceedings" and because the failure to so admonish parents would be a violation of the parents' due process rights.

The appeal in this matter has been rendered moot by the fact that T.F. has subsequently executed a surrender of his parental rights. The majority, however, finds that the public interest exception to the mootness doctrine should be applied to consider "whether circuit courts were required under former section 1—5(3) of the Act to admonish parents that they risked termination of their parental rights if they failed to cooperate with DCFS." 208 Ill. 2d at 157. The public interest exception applies, the majority claims, because the State has asserted that "the appellate court's decision threatens to disturb a great number of dispositions under the Act where the initial court appearance, adjudicatory hearing, or dispositional hearing occurred prior to January 1, 1998." 208 Ill. 2d at 157.

The issue of public importance, to justify the invocation of the public interest exception, therefore, is the correctness of the appellate court's determination that "as a matter of due process, section 1—5(3)'s requirement that [parents] be informed of the nature of the proceedings included the right to be admonished that [they] risked termination of [their] parental rights if [they] failed to cooperate with DCFS or to comply with the terms of [the] service plan." 208 Ill. 2d at 162. However, this is not the issue which the majority answers.

The majority cites *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), for the factors to be considered when determining what process is due in proceedings implicating fundamental liberty interests.

While purporting to apply these factors to the present case, the majority, in essence, engages in harmless error review, holding:

"We find that the risk that T.F. was erroneously deprived of [the fundamental interest in the care, custody and control of his child] as a result of the failure to give the admonishment in question is minimal because *the record amply demonstrates that T.F. was aware of the need to cooperate with DCFS and that his parental rights could be terminated.*" (Emphasis added.) 208 Ill. 2d at 166.

Thus, the majority answers a question which is quite narrow, *i.e.*, whether T.F.'s due process rights were violated. The issue of public importance, and the one which purportedly threatens to disturb a great number of other dispositions, is much broader: whether the requirement in former section 1—5(3) that circuit courts inform parents of the *nature of the proceedings* includes, as a matter of due process, the requirement that circuit courts admonish parents that they risked the termination of their parental rights if they failed to cooperate with DCFS.

As it stands, the majority does not resolve the issue which threatens to disturb the "great number of dispositions under the Act where the initial court appearance, adjudicatory hearing, or dispositional hearing occurred prior to January 1, 1998." Employing the majority's analysis, each case will have to be examined to determine whether the record demonstrates that the parent knew of his or her rights. Moreover, the majority's opinion provides no guidance on the question of whether due process requires the admonishments in question in those instances where the record fails to affirmatively demonstrate that the parent was aware of the need to cooperate with DCFS. Thus, the public interest rationale for reviewing this appeal as an exception to the mootness doctrine is completely lost.

If the public interest exception to the mootness

doctrine is to apply in this case, this court should and must decide whether, under former section 1—5(3), parents had to be admonished at the initial hearing, at adjudication, and at disposition, that they were required to cooperate with DCFS and comply with the service plans or risk termination of their parental rights and whether the failure to so admonish parents was a due process violation which requires that orders terminating their parental rights be reversed. Although the majority purports to answer this question, the analysis reveals that the question is still open. For this reason, I respectfully dissent.

JUSTICE FREEMAN joins in this dissent.

JUSTICE KILBRIDE, also dissenting:

I respectfully dissent. This appeal is moot and should be dismissed. Not only does this court lack jurisdiction to decide this case because there is no actual controversy, it fails to meet the rigid requirements of the public policy exception to the mootness doctrine. This court's function is to decide controverted issues between real parties. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997). It is not a function of this court to issue advisory opinions that have no effect whatsoever on the rights of the parties or the outcome of the case before the court.

This court's jurisdiction is restricted to cases that present an actual controversy. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001). The existence of a real controversy is not a mere technicality; rather, it is a prerequisite to the exercise of this court's jurisdiction. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999). Today's opinion fails to follow the standards for applying the mootness exception as announced in *In re J.B.*, 204 Ill. 2d 382 (2003), *In re Tekela*, 202 Ill. 2d 282 (2002), *In*

*re India B.*, 202 Ill. 2d 522 (2002), and *Walgreen*, 186 Ill. 2d 362.

The public policy exception to the mootness doctrine only exists when the question involved (1) is of a substantial public nature, (2) an authoritative determination for future guidance is needed, and (3) the circumstances are likely to recur. *Walgreen*, 186 Ill. 2d at 365; *Richardson*, 179 Ill. 2d at 256. This exception is to be narrowly construed. *J.B.*, 204 Ill. 2d at 391; *India B.*, 202 Ill. 2d at 543; *Walgreen*, 186 Ill. 2d at 365.

The question of whether circuit courts were required under the former section 1—5(3) of the Juvenile Court Act of 1987 (705 ILCS 405/1—5(3) (West 1996)) to admonish parents that they risked termination of their parental rights if they failed to cooperate with DCFS simply does not meet the rigid requirements of the public interest exception to the mootness doctrine.

The majority concludes that, although the case is moot because T.F. voluntarily surrendered his parental rights several days before oral argument, authoritative guidance from this court is required because the State alleged during oral argument that "the appellate court's decision threatens to disturb a great number of dispositions under the Act where the initial court appearance, adjudicatory hearing, or dispositional hearing occurred prior to January 1, 1998." 208 Ill. 2d at 157. There is, however, no factual basis in the record to support the conclusion that a *great* number of dispositions, or, for that matter, *any* pre-1998 dispositions, are threatened to be disturbed.

This issue has not arisen in the past and it is almost certain not to recur in the future. This court's authoritative guidance is not needed for future cases because all post-1998 initial appearances, adjudications, and dispositions are governed by the January 1, 1998, amendments to the Act, requiring trial courts to admonish parents

that they "must cooperate with [DCFS], comply with the terms of the service plans, and correct the conditions that require the child to be in care, or risk termination of their parental rights" (705 ILCS 405/1—5(3), 2—21(1), 2—22(6) (West 1998)). Moreover, the need for authoritative guidance is further diminished because there are no conflicting precedents. *Walgreen*, 186 Ill. 2d at 365-66.

I also share the Chief Justice's concern that the majority fails to address the very issue it uses to justify invoking the public interest exception to the mootness doctrine. 208 Ill. 2d at 167 (McMorrow, C.J., dissenting, joined by Freeman, J.). Instead, the majority employs a harmless error analysis, while purporting to apply a due process analysis. Since T.F. voluntary surrendered his parental rights, this due process issue no longer exists, making it impossible for this court to grant either party effectual relief.

Accordingly, this appeal should be dismissed as moot.