THIRD DIVISION

October 15, 2003

No. 1-01-1823

In re
 TRAVARIUS O., a Minor

) Appeal from the

(The People of the State of Illinois, ) Circuit Court of

) Cook County.

Petitioner-Appellee, ) 

) 

v. ) 

) 

Herman O., ) The Honorable

) Susan M. Coleman,

Respondent-Appellant). ) Judge Presiding.

JUSTICE SOUTH delivered the opinion of the court:
 

Following a hearing, the circuit court found respondent, Herman O., to be an unfit parent and unable to care for his son, Travarius O., based on his depraved behavior and his repeated incarcerations.  At a subsequent hearing, the court held it was in the best interest of the child to terminate respondent's parental rights and to appoint a guardian with the right to consent to adoption.  Respondent contends on appeal: (1) that the circuit court abused its discretion by failing to appoint respondent an attorney to represent him during the hearings; (2) that the court's finding of unfitness was against the manifest weight of the evidence; and (3) that the court's finding that it was in the minor's best interest to terminate respondent's parental rights was against the manifest weight of the evidence.  We affirm.

Travarius was born May 3, 1997, and tested positive for exposure to cocaine and heroin.  A finding of neglect was entered July 29, 1997.  Respondent and the child's mother, Tracy H., who is not a party to this appeal, were found to be unable, for some reason other than financial circumstances alone, and to be unwilling to care for, protect, train, or discipline Travarius.  On the same date, the child was adjudicated a ward of the court and placed under the guardianship of the Department of Children and Family Services (DCFS).

The State filed petitions on August 2, 1999, and on September 6, 2000, for termination of parental rights and appointment of a guardian with the right to consent to adoption.  The petitions alleged respondent was an unfit parent because he behaved in a depraved manner; because he was incarcerated as a result of a conviction and the incarceration would prevent him from discharging his parental responsibilities in excess of two years after the filing of the petitions; and because respondent's repeated incarcerations had prevented him from discharging his parental responsibility in violation of subsections 1(D)(i), 1(D)(r), and 1(D)(s) of the Adoption Act.  750 ILCS 50/1(D)(i), (D)(r), (D)(s)
 (West 2002). 

Respondent appeared in court on September 17, 1999, on which date attorney Paul Katz was appointed to represent him in contesting the State's petitions.  During an April 2000 discovery hearing, respondent indicated to the circuit court that he no longer wished Katz to represent him.  Katz asked leave to withdraw, which the court granted.  The trial judge admonished respondent, "This is the one and only time.  If you don't like the attorney that you're gonna [sic] speak to today, you could hire your own lawyer to represent you."  The judge thereafter appointed attorney Charles Aron to represent respondent.

During a July 2000 status hearing, Aron addressed the court and stated that he could not proceed in representing respondent without violating the Canons of Ethics.  The trial judge again warned respondent, "[Y]ou can't keep picking lawyers until somebody decides to go along with what you want to do."  The judge explained to respondent that his attorneys could not be made to make statements in open court that the attorneys did not believe were true.  Aron asked respondent permission to disclose the contents of their conversations with the judge.  Respondent declined.  The judge stated that she would not appoint another attorney and that respondent would have to represent himself.  The judge granted Aron leave to withdraw.  Respondent indicated that he would not participate in discovery or the termination hearing without representation.

At the intended close of discovery in August 2000, the trial judge offered to appoint respondent new counsel but would not appoint any further attorneys if new counsel subsequently moved to withdraw.  She stated, "You have fair warning that this is the third and final lawyer that is going to be appointed."  Thereafter, the court appointed attorney Larry Necheles to represent respondent.

At a case management conference in March 2001, respondent stated that he did not wish Necheles to represent him.  The judge repeated her warning from the prior hearing that she was unwilling to appoint respondent any new counsel were Necheles to withdraw.  Respondent again stated that he would not proceed with Necheles as counsel.  The court vacated Necheles's appointment and advised respondent that he would have to proceed 
pro se.  
   

At the trial on the termination petition, respondent indicated to the court that he was unaware of what was taking place because his appointed attorneys had not apprised him of the proceedings.  The trial judge stated that Necheles was present in court and offered to reappoint him to assist respondent.  Respondent declined and the court proceeded to trial.  The court took judicial notice of the July 1997 adjudications as to neglect and guardianship as well as certified copies of respondent's April 1997 burglary conviction, for which he was sentenced to 10 years in prison; respondent's January 1993 burglary conviction, for which he was sentenced to 6 years; and respondent's 1991 conviction of unlawful use of a weapon by a felon, for which he was sentenced to 2 years.  

The State called respondent as a witness, but respondent refused to take the stand and to be sworn.  He eventually agreed to be sworn in, but refused to answer any questions from the assistant State's Attorney or the public guardian.  When asked to state his name for the record, respondent declared that he was invoking his fifth amendment right against self-incrimination and refused to answer.  The trial judge advised respondent, several times, that she would treat his refusal to answer any questions as an admission.  

By asking questions that respondent refused to answer, the assistant State's Attorney elicited the following facts: that respondent was the natural father of Travarius O.; that respondent was presently incarcerated; that respondent was convicted of burglary in April 1997 and sentenced to 10 years' imprisonment, and that he was still incarcerated on that count; that respondent was taken into custody for that offense on November 16, 1996; that respondent had been incarcerated since before Travarius' birth; that respondent was convicted of burglary in January 1986 and sentenced to five years; that respondent was convicted of aggravated battery in September 1982 and sentenced to five years; that respondent was convicted of robbery in August 1982 and sentenced to five years; that respondent was convicted of burglary in November 1992 and sentenced to six years; that respondent was convicted of burglary in January 1993 and sentenced to six years; that respondent was convicted of unlawful use of a weapon by a felon in May 1991 and sentenced to two years; that respondent was incarcerated on August 2, 1999, the date that the State filed its petition to terminate respondent's parental rights; and that respondent would not be released until November 2001.  

The State then called Yolanda Dunmars, a social worker for Chicago Associates for Retarded Citizens (CARC), who was assigned to Travarius O.'s case.  Dunmars testified that she had begun service for Travarius and his older sister, Sashiana H. (who has the same mother but a different father), in March 1998 and that she had offered Travarius' natural mother, Tracy H., assistance in obtaining drug treatment services, parenting classes, and counseling.  The mother indicated an interest in obtaining services, but Dunmars lost contact with her in October 1998.  In March 1999, Dunmars sent the mother a letter informing her that her children's cases were progressing toward termination of her parental rights.  Dunmars received no response to the letter.

On cross-examination, Dunmars stated that Travarius' mother had submitted to seven compulsory urine drops and had failed to appear for three others.  One of the performed drops tested positive for narcotics, but Dunmars was unaware of the date that the drop took place and whether it was performed before or after the mother had completed a drug treatment program.  Respondent did not ask Dunmars any questions.  

The State and the public guardian then rested as to the unfitness portion of the trial.  Respondent presented no evidence.  The circuit court found that the State had proven the allegations in its petitions by clear and convincing evidence and that Tracy H., respondent, and Sashiana's natural father were unfit to care for their respective minor children.  The court entered an order terminating respondent's parental rights based on his depraved behavior and repeated and ongoing incarceration. 

The court then proceeded to a hearing to determine the best interests of Travarius and his sister.  The State called Dunmars, who testified that the children had been placed in foster care with nonrelatives when she was assigned to their case in March 1998.  The children were removed to preadoptive placement with nonrelatives in August 1998 and remained there at the time of the hearing.  The foster parents with whom the children were placed were married and willing to adopt both children.  The children had bonded with their foster family and there had been no unusual incidents while the children were in their care.  Dunmars believed that the current placement was safe and appropriate.  Travarius and Sashiana had bonded with the foster parents' grown biological children and their two other foster children.  The foster parents took the children to church every week along with their biological children.  The foster mother was a beautician and worked in her home, and the foster father stayed home on medical leave.

Dunmars had considered placing the children with relatives.  Sashiana's maternal aunt initially expressed interest in caring for her but failed to follow up on any of Dunmars' recommendations.  Dunmars had considered placing Travarius with respondent's mother, who indicated to Dunmars that she already had several children in her care at that time but would consider caring for Travarius.  Respondent's mother made no further contact with Dunmars and both children remained in their current placement.  

Dunmars believed that it was in the children's best interests to terminate the parental rights of their biological parents, that the children be free for adoption, and that the current foster parents adopt the children.

Respondent asked Dunmars why Travarius could not be placed with his paternal grandmother unless she also cared for Sashiana.  Dunmars responded that she felt it was in the children's best interests that they stay together and not be separated.  The State and public guardian rested, and respondent presented no evidence.

The trial court ruled that the termination of respondent's parental rights was in Travarius' best interests.  The court stated that DCFS had determined that Travarius should remain with his sister no matter where they were placed, that the foster parents had been acting in the children's best interest, and that it was in the children's best interest that they remain in the foster parents' care.  The court then appointed a guardian with the right to consent to the children's adoption and set a permanency goal of adoption.  

On appeal, respondent initially contends that his due process right to counsel was violated when the circuit court refused to appoint him new counsel after Necheles' appointment was vacated.  

Under the Adoption Act, an indigent parent is entitled to court-appointed counsel for proceedings pursuant to a petition for termination of parental rights.  705 ILCS 405/1-5 (West 2002); 
In re Adoption of Sotelo
, 130 Ill. App. 3d 398, 400 (1985).  However, the Supreme Court has held that an indigent parent does not necessarily have a due process right to court-appointed counsel in a termination proceeding brought by the State.  
Lassiter v. Department of Social Services
, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981).  In Illinois, courts analyze the possible deprivation of a parent's due process rights in termination and adoption proceedings by balancing the factors enunciated by the Court in 
Mathews v. Eldridge
, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).  See 
In re D.T.
, 338 Ill. App. 3d 133, 151-52 (2003).  The 
Mathews
 factors are: (1) the private interests affected by the State's action; (2) the risk of an erroneous deprivation of the parent's interest through the procedures used and the probable value of additional safeguards; and (3) the State's interest, including the function involved and the fiscal and administrative burdens that the additional safeguards would entail.  
Mathews
, 424 U.S. at 335, 41 L. Ed. 2d at 33, 96 S. Ct. at 903.  

Here, the first factor is respondent's interest in the custody, care, and control of his child and in maintaining a parental relationship with him.  This is a fundamental interest which courts will not extinguish lightly.  
In re M.H.
, 196 Ill. 2d 356, 365 (2001).  Of equal import is Travarius' interest in a stable and safe home environment and in maintaining a relationship with his foster parents.  
In re D.T.
, 338 Ill. App. 3d at 152.  Considering respondent's repeated and continuous incarcerations and the effect they have had and are likely to have on his ability to care for Travarius, we find that this first factor weighs against respondent.

Under the second factor, we must balance the rights of the child versus the rights of respondent to determine who should shoulder the risk of error at the termination and best interest hearings.  
In re D.T.
, 338 Ill. App. 3d at 153.  In this case, while the risk of an erroneous deprivation of respondent's parental rights and his right to counsel is a serious one, the trial court made every possible effort to protect respondent's right to counsel and to ensure a full and fair adjudication of respondent's parental rights.  

The court appointed attorney Katz at the outset of the proceedings.  A few months later, Katz withdrew because respondent no longer wished Katz to represent him.  The court appointed a new attorney, Aron, and granted a continuance to allow Aron to prepare the case.  Aron subsequently withdrew because he believed he could not proceed without violating rules of attorney ethics.  The trial judge initially refused to appoint new counsel, but relented at the next hearing and appointed Necheles.  After the case was continued again, respondent refused to proceed with Necheles as counsel, whose appointment the court then vacated.

Neither the statute nor judicial precedents specify how many times a trial court must appoint counsel in the event that counsel withdraws or an indigent parent no longer desires their particular services.  While we judge that three appointments suffice in this case, other circumstances may call for a different measure.  Moreover, we see no other additional safeguards that the trial court could have provided other than again appointing new counsel, and given respondent's failure to cooperate with three separate attorneys, we see no value in repeating the measure on a fourth occasion.

Under the third 
Mathews
 factor, we consider the State's interest in preserving and promoting the welfare of the child and its interest in reducing the cost and burden of termination proceedings.  
In re D.T.
, 338 Ill. App. 3d at 153.  The State's interest in Travarius' welfare is obvious.  Furthermore, respondent was twice granted new counsel and twice granted continuances in order to allow the new attorneys to prepare the case, prolonging the proceedings by several months.  Moreover, the trial court granted each of appointed counsel's petitions for attorney fees incurred in representing respondent.  Appointing respondent new counsel for yet a third time would have prolonged the case even further and would have been an additional drain on the state treasury, which would have had to reimburse a fourth lawyer for simply repeating the work of three others.

Respondent correctly cites the rule that parties in termination proceedings are entitled to effective assistance of counsel to the same degree as are criminal defendants under 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  
In re R.G.
, 165 Ill. App. 3d 112, 127 (1988).  He also relies on our supreme court's comment in 
In re Adoption of K.L.P.
, 198 Ill. 2d 448, 461 (2002), that "the legislature has chosen to guarantee the assistance of counsel to indigent parents rather than requiring courts to engage in the case-by-case determination permitted under 
Lassiter
."

However, respondent concedes that he is not entitled to the counsel of his choosing.  Furthermore, the trial judge made every reasonable effort to guarantee respondent his right to counsel, and, we believe, was generous in appointing additional counsel when his original attorney withdrew.  Finally, respondent offers no argument as to how or why his apparent lack of effective representation prejudiced him, as is required under 
Strickland
.  
People v. Caballero
, 126 Ill. 2d 248, 259-60 (1989).

For the reasons stated above, we find that each of the 
Mathews
 factors weighs against respondent and that the circuit court thus did not abuse its discretion by failing to appoint him new counsel on a fourth occasion.

Respondent next contends that the circuit court's findings that he was unfit because he had behaved in a depraved manner and because his current and repeated incarceration would prevent him from discharging his parental responsibilities were against the manifest weight of the evidence.  

In termination proceedings, the State must prove by clear and convincing evidence that a respondent is an unfit parent.  
In re J.B.
, 198 Ill. App. 3d 495 (1990).  We will not reverse a circuit court's finding of unfitness unless the decision to terminate parental rights is against the manifest weight of the evidence.  
In re J.B.
, 198 Ill. App. 3d at 497.   Such a decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record.  
In re A.J.
, 269 Ill. App. 3d 824, 828 (1994).   

Section 1(D)(i) of the Adoption Act provides that a parent can be found unfit based on a showing of depravity.  750 ILCS 50/1(D)(i) (West 2002).  There is a rebuttable presumption that a parent is depraved if he has been criminally convicted of at least three felonies and at least one of the convictions occurred within five years of the filing of the State's petition seeking termination of parental rights.  750 ILCS 50/1(D)(i) (West 2002).  Certified copies of conviction create a 
prima facie
 showing of depravity
, which shifts the burden to the parent to show by clear and convincing evidence that he is in fact not depraved.  
In re J.A.
, 316 Ill. App. 3d 553, 562 (2000).

Respondent argues that his past convictions are not sufficient to prove he has behaved in a depraved manner and that his attendance at the termination proceedings showed concern for Travarius' welfare.  He relies on our holding in 
In re Sanders
, 77 Ill. App. 3d 78 (1979), that a parent's history of criminal convictions, standing alone, is not sufficient to establish depravity.  However, 
Sanders
 was decided before the enactment of subsection 1(D)(i) and has since been superseded by the statute.  See 
In re T.S.
, 312 Ill. App. 3d 875, 878 (2000).  

Here, the State presented evidence of at least seven of respondent's felony convictions, the most recent occurring within five years of the date that the State's petition was filed, thus establishing a rebuttable presumption of respondent's depravity.  Respondent presented no evidence in rebuttal and left the trial court with nothing to consider in his favor.  Therefore, the trial court's finding that respondent was unfit because of depravity was not against the manifest weight of the evidence.

Respondent further contends that the trial court's findings that he was unfit because his present and repeated incarceration would prevent him from discharging his parental responsibilities were against the manifest weight of the evidence.  Because the State is only required to establish the existence of one statutory ground of unfitness, and did so by clear and convincing evidence that respondent behaved in a depraved manner, we need not reach these allegations.  
In re D.D.
, 196 Ill. 2d 405, 417 (2001).

Respondent lastly contends that the circuit court's finding that it was in Travarius' best interest to terminate respondent's parental rights was against the manifest weight of the evidence.

Where the trial court finds a parent unfit by clear and convincing evidence, the parent's rights may be terminated under the Juvenile Court Act if the court finds that termination is in the best interests of the child.  705 ILCS 405/2-29(2) (West 2002).  Once a finding of parental unfitness has been made, all considerations yield to the best interests of the child.  
In re G.L.
, 329 Ill. App. 3d 18, 24 (2002).  In determining the child's best interests, the court is to consider a number of factors in the context of the child's age and developmental needs.  705 405/1-3(4.05) (West 2002).  Among the factors to be considered are the child's physical safety, welfare, sense of attachments, community ties, need for permanence and continuity in relationships with parent figures and siblings, and the preferences of the persons available to care for the child.  705 405/1-3(4.05)  The decision of whether termination of parental rights is in the best interests of the child is within the sound discretion of the trial court, and that determination will not be disturbed unless it was contrary to the manifest weight of the evidence or the trial court otherwise abused its discretion.  
In re G.L.
, 329 Ill. App. 3d at 25.

Respondent argues that it was not in Travarius' best interests to deny him the opportunity of knowing his father and that respondent may have been capable of caring for Travarius upon his release in November 2001 had DCFS provided services to respondent and prepared him to care for the child.  Respondent ignores the factors enunciated by the trial judge in reaching her decision, specifically, DCFS's determination that Travarius and his sister ought to be placed together, that Travarius had bonded with his foster family and established ties with their church community, and that his foster parents wished to adopt him.  It was well within the trial court's discretion to consider these factors as well as respondent's desire that the child have a relationship with his father and respondent's potential rehabilitation in determining Travarius' best interests.  Upon consideration of those factors, the court properly exercised its discretion in terminating respondent's parental rights and appointing a guardian with the right to consent to adoption.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN, P.J., and HALL, J., concur.