*In re* BRANDON L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Michelle L., Respondent-Appellant).

Second District    No. 2—03—1235

Opinion filed May 3, 2004.

316

Rolfe F. Ehrmann, of Ehrmann, Gehlbach, Beckman, Badger & Lee, of Dixon, for appellant.

Deborah E. Ellis, State's Attorney, of Oregon (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

JUSTICE KAPALA delivered the opinion of the court:

Respondent, Michelle L., appeals from the judgment of the circuit court of Ogle County terminating her parental rights to her son Brandon L. We affirm.

## I. BACKGROUND

On September 10, 1999, a petition seeking the adjudication of wardship of Brandon pursuant to section 2—4(c) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—4(c) (West 2002)) was filed in the circuit court of Ogle County. The petition stated:

> "On or about September 13, 1999 [*sic*], through no fault, neglect, or lack of concern of his parents, Michelle [L.] and Elmer [M.], said minor was without proper medical care necessary for his well[-] being in that the minor of [*sic*] July 9, 1999[,] was diagnosed with peri-orbital rhabdomyosarcoma of the right eye, a potentially lethal cancerous tumor, for which the minor's parents are unable to provide the necessary hygiene and medication upon the minor's discharge from the University of Wisconsin-Madison Children's Hospital."

On January 11, 2000, the trial court adjudicated Brandon a dependent child and placed guardianship with the Department of Children and Family Services (DCFS), with power to place and power to consent to medical treatment if necessary. Respondent and Elmer were ordered to cooperate with DCFS and follow various conditions.

On April 25, 2002, the State brought a petition to terminate the parental rights of respondent and Elmer. The petition alleged that respondent and Elmer were unfit parents pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2002)) and section 2—29 of the Act (705 ILCS 405/2—29 (West 2002)) in that:

> "(a) They have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the minor, pursuant to 750 ILCS 50/1 D(b);
>
> (b) They have substantially or repeatedly neglected the minor pursuant to 750 ILCS 50/1 D(d);
>
> (c) They have failed to protect the minor from conditions within the environment injurious to the minor's welfare, pursuant to 750 ILCS 50/1 D(g);
>
> (d) They have demonstrated habitual drunkenness or addiction to drugs other than those prescribed by a physician for at least one year prior to the filing date of the Petition to Terminate Parental Rights, pursuant to 750 ILCS 50/1 D(k);
>
> (e) They have failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor, pursuant to 750 ILCS 50/1 D(m)(i); and

(f) They have continuously or repeatedly failed to provide the minor with adequate food, clothing, or shelter, pursuant to 750 ILCS 50/1 D(o)."

On October 8, 2002, a fitness hearing was conducted. At the conclusion of the hearing, the trial court found that the State had proven the parents unfit only under grounds (a) and (e) of its petition.

On January 14, 2003, a best interest hearing was held. At the commencement of these proceedings, the guardian *ad litem* moved to exclude respondent during Brandon's testimony. The guardian *ad litem* argued that respondent could be excluded pursuant to section 2—18(4)(d) of the Act (705 ILCS 405/2—18(4)(d) (West 2002)). The State concurred with the guardian *ad litem*'s request, arguing that *in camera* testimony would ensure that Brandon would not be unjustly influenced during his testimony. Respondent objected, contending that section 2—18(4)(d) applied only to abuse and neglect cases. The trial court granted the State's motion to exclude respondent during Brandon's testimony. The trial court also ruled that after the State and Brandon's guardian *ad litem* were finished questioning Brandon, the parents' attorneys would be allowed a recess to confer with their clients before they questioned Brandon. Brandon testified outside of respondent's presence, and in the presence of only the trial judge, court reporter, guardian *ad litem*, and counsel for each parent. Counsel for each parent had an opportunity to examine Brandon. Brandon testified, *inter alia*, that he wished to remain with his foster father. Respondent's parental rights were terminated and this appeal followed. Only respondent appeals, because Elmer passed away during the pendency of the trial court proceedings.

## II. ANALYSIS

Respondent's sole contention on appeal is that the trial court committed reversible error by not allowing her to be present during Brandon's testimony. She contends that she had both a statutory right and a due process right to be present. The State agrees that respondent had a statutory right to be present and that, therefore, the best interest determination of the trial court should be vacated and this cause should be remanded for a new best interest hearing. The State expresses no opinion regarding respondent's constitutional argument. This court is not bound by the State's confession of error. *In re Guardianship of Muellner*, 335 Ill. App. 3d 1079, 1083 (2002). We disagree with respondent's contention that because the Act provided that she had a right to be present, her exclusion constitutes reversible error. We also find that respondent's due process rights were not violated.

### A. Respondent's Statutory Right to Be Present

■■ Section 1—5(1) of the Act states, in relevant part:

"Except as provided in this Section in paragraph (2) of Sections 2—22, 3—23, 4—20, 5—610 or 5—705, the minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel." 705 ILCS 405/1—5(1) (West 2002).

None of the sections cited in the excerpt quoted above allow a court to exclude a parent from being present during a minor's testimony. Here, however, the minor did testify in conformity with section 2—18(4)(d) of the Act (705 ILCS 405/2—18(4)(d) (West 2002)), which indicates that a minor may testify without the parents being present:

"There shall be a rebuttable presumption that a minor is competent to testify in abuse or neglect proceedings. The court shall determine how much weight to give to the minor's testimony, and may allow the minor to testify in chambers with only the court, the court reporter and attorneys for the parties present." 705 ILCS 405/2—18(4)(d) (West 2002).

We do not, as the parties urge, read section 2—18(4)(d) to allow a minor to testify *in camera* in only abuse and neglect proceedings.

■ In construing the meaning of a statute, the primary objective of the court is to ascertain and give effect to the intention of the legislature. *Carver v. Sheriff of LaSalle County*, 203 Ill. 2d 497, 507 (2003). The most reliable indicator of the legislature's intention is the language of the statute. *Carver*, 203 Ill. 2d at 507. We must give the statutory language its plain and ordinary meaning. *Carver*, 203 Ill. 2d at 507. We review the construction of a statute *de novo*. *Carver*, 203 Ill. 2d at 506-07. Furthermore, we must not construe a statute such that it will achieve absurd results. *Gerwin v. Livingston County Board*, 345 Ill. App. 3d 352, 361 (2003).

■ In this case, we first note that section 2—18(1) discusses which rules of evidence are applicable to "this Article." 705 ILCS 405/2—18(1) (West 2002). Article II of the Act is entitled, "ABUSED, NEGLECTED OR DEPENDENT MINORS." Therefore, we start our analysis by presuming that the evidentiary rules enunciated in section 2—18 are applicable in abuse, neglect, and dependency proceedings. Section 2—18(4)(d) mentions abuse and neglect proceedings only in the first sentence, which addresses competency to testify. The second sentence, which addresses the weighing of the minor's testimony and

the ability of the court to have the minor testify *in camera*, does not reference abuse and neglect proceedings. We read the plain meaning of this sentence as giving the trial court authority to conduct *in camera* examination of a minor in dependency proceedings as well as abuse and neglect proceedings. If we read the second sentence of section 2—18(4)(d) as the parties suggest, then one could argue that the trial court "shall determine how much weight to give to the minor's testimony" only in abuse and neglect proceedings. We cannot see how testimony could be weighed only in abuse and neglect proceedings. Stripping the trial court of its ability to weigh testimony would be antithetical to its role as trier of fact in these cases. Clearly, the legislature could not have intended for such an absurd result.

We note that in construing the second sentence of section 2—18(4)(d), we make no determination as to the scope of the first sentence of that section. Our discussion of that sentence was merely to distinguish the wording of the two sentences. We further note that respondent has made no contention that the trial court's order was an abuse of discretion, and, therefore, we do not express any opinion as to whether the trial court abused its discretion.

### B. Respondent's Due Process Rights

■ Having determined that the exclusion of respondent did not run afoul of section 2—18(4)(d), we address respondent's due process argument. "A parent has a fundamental due process right to the care, custody and control of his or her children, but that right is subject to termination." *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003). A parental rights termination proceeding must comport with the guarantees of procedural due process because such a proceeding implicates a fundamental liberty interest. *In re Andrea F.*, 208 Ill. 2d at 165. In analyzing whether a parent's procedural due process rights were violated in a termination proceeding, we apply the test enunciated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). *In re Andrea F.*, 208 Ill. 2d at 165. In *Mathews*, the Supreme Court stated that the factors to be considered in determining whether a due process violation has occurred are: (1) the private interest implicated by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

■ Taking into account all of the *Mathews* factors, we do not find

that respondent's due process rights were violated in this case. As to the first factor, a parent's right to care, custody, and control of his or her child is a fundamental right that will not be lightly terminated by the courts. *In re Andrea F.*, 208 Ill. 2d at 166. Of equal importance is the minor's interest in "a stable and safe home environment and in maintaining a relationship with his foster parents." *In re Travarius O.*, 343 Ill. App. 3d 844, 851 (2003). Furthermore, we note that in the best interest phase of a termination of parental rights proceeding, the interests of the parent and the child diverge and due process does not require standards as strict as in the unfitness phase. See *In re D.T.*, 338 Ill. App. 3d 133, 150 (2003) (holding that due process requires only a preponderance of the evidence burden of proof in the best interest phase versus a clear and convincing evidence standard in the unfitness phase); see also *Santosky v. Kramer*, 455 U.S. 745, 760-61, 71 L. Ed. 2d 599, 611, 102 S. Ct. 1388, 1398 (1982). By the time of the best interest phase of the proceedings, "the parent has been found unfit by clear and convincing evidence. While the parent retains a fundamental interest, the proper focus of this hearing is on the child. [Citation.] Once a finding of unfitness has been made, all considerations, including the parent's rights, must yield to the best interest of the child. [Citations.]" *In re D.T.*, 338 Ill. App. 3d at 153.

"Under the second factor, we must balance the rights of the child versus the rights of respondent to determine who should shoulder the risk of error at the termination and best interest hearings." *In re Travarius O.*, 343 Ill. App. 3d at 851. The risk of erroneous deprivation of respondent's interest is that, because respondent's absence could dispose Brandon not to give truthful testimony and could prevent respondent from adequately questioning Brandon, respondent's parental rights could be wrongfully terminated. We find such a risk to have been minimal in this case and that there were adequate substitute safeguards employed by the trial court. Not only was respondent's attorney present during Brandon's questioning, she was also given the opportunity to take a recess after the guardian *ad litem* and the State questioned Brandon in order to confer with respondent about Brandon's testimony and what questions needed to be asked. Although respondent and her attorney chose not to take such a recess, the opportunity was available to them should they have desired to do so. We realize that respondent did not have an opportunity to view the mannerisms and demeanor of Brandon as he testified, but we find that the value of such an opportunity was minute, especially in light of the other safeguards afforded respondent.

Finally, we recognize that the State has an interest in preserving and promoting the welfare of the child and in reducing the cost and

burden of termination proceedings. *In re Travarius O.*, 343 Ill. App. 3d at 852. This goal is partly achieved by eliciting the truthful testimony of the minor. Clearly, having the minor testify without possible influence from his mother or any other party helps ensure that truthful testimony is elicited. By allowing respondent's attorney to be present and allowing a recess if she so desired, the trial court protected respondent's rights at minimal burden to the government and aided in the pursuit of determining the best interest of the minor. We find that the cost of the procedures employed by the trial court does not weigh into our consideration, since both the methods actually employed by the trial court and the methods requested by respondent involved no significant cost to the State.

The procedures used by the trial court adequately protected respondent's interest, minimized the risk of compromising that interest, and at the same time accommodated the interest of the State. Accordingly, we find that respondent's due process rights were not violated in this case.

## III. CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court of Ogle County excluding respondent from the courtroom during the minor's testimony.

Affirmed.

BYRNE and GILLERAN JOHNSON, JJ., concur.