2025 IL App (2d) 240524-U
Nos. 2-24-0524 & 2-24-0525 cons.
Order filed February 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* S.J.-U., a Minor | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | No. 24-JA-020 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Mary H. Nader, |
| Appellee, v. Casey J., Respondent-Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| *In re* T.J.-U., a Minor | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | 24-JA-021 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Mary H. Nader, |
| Appellee, v. Casey J., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We grant appellate counsel's motion to withdraw and affirm the trial court's judgment finding respondent an unfit and unable parent, concluding there exist no issues of arguable merit to be raised on appeal.

¶ 2    Respondent, Casey J., appeals from the trial court's order finding him unfit and unable to parent his children, S.J.-U. (born in June 2019) and T.J.-U. (born in January 2017). His appellate counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), stating that she has read the record and concluded there exist no issues of arguable merit to be raised on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (applying *Anders* to cases involving parental unfitness). Counsel has supported her motion with a memorandum of law providing a statement of facts, potential issues, and argument as to why those issues lack arguable merit. See *In re Alexa J.*, 345 Ill. App. 3d 985, 988 (2003) (holding in part that "counsel must identify at least one potentially justiciable issue in a motion to withdraw under *Anders*."). Counsel served respondent with a copy of the motion and memorandum. We advised respondent that he had 30 days to respond to counsel's motion. No timely response was filed. We conclude that this appeal lacks arguable merit based on the reasons set forth in counsel's memorandum. Therefore, we grant counsel's motion and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4                 A. Neglect Petition and Shelter Care Proceeding

¶ 5    On March 20, 2024, the State filed petitions for adjudication of wardship of S.J.-U. and T.J.-U., alleging that they were neglected minors, and their environment was injurious to their welfare because of allegation of sexual abuse from their father, respondent. The petition alleged that respondent had showered with the minor children and experienced a partial erection. The petition provided a detailed history of Department of Children and Family Services (DCFS) interactions with the family, including more than a dozen instances over the prior three years.

¶ 6    A shelter care hearing was held on March 21, 2024. The trial court found probable cause for the filing of the petition and appointed a guardian *ad litem* (GAL) for the minor children. The

trial court appointed a Special Public Defender (SPD) for respondent and, finding no immediate and urgent necessity, ordered the minors returned to respondent's care. The trial court admonished respondent that he may not be nude or expose his genitals to the minor children. Based upon the restoration of custody of the minor children to respondent, the trial court ordered that the matter be transferred to Lake County based on the father's residence.

¶ 7      On April 24, 2024, the State filed a motion to modify custody. The mother, Sophia J.-U., reported that she had been assisting the children with bathing when S.J.-U. made allegations that respondent had inserted his fingers into her vagina during previous baths. DCFS implemented an out-of-home safety plan and took protective custody of S.J.-U. and T.J.-U. The motion also noted that Lake County had rejected the transfer.

¶ 8      The trial court held a status hearing on June 6, 2024. The respondent's SPD stated that while he denied the specific allegations, respondent did agree to the revocation of the return home order. Respondent voluntarily agreed to the safety plan for the children. As he was "probably not in the head space to care for them," respondent's SPD also stated that the father believed it was in the best interest of the minor children to remain in foster care. The SPD stipulated to paragraphs 1, 2, 3A, B, C, D, G, J, K (to indicated reports only) and L. Paragraph L states that the minor children are under 18 years of age and their environment is injurious to their welfare. The State accepted the stipulations and the trial court fully admonished respondent. Upon questioning, respondent stated he was entering into the stipulations voluntarily, was not being forced or coerced into the stipulations, and had not been promised anything to convince him to enter the stipulations. Sophia J.-U. was absent from the hearing and the State asked the trial court to reserve findings of adjudication. The trial court agreed.

¶ 9                          B. Adjudication and Disposition

¶ 10    The trial court convened the adjudicatory hearing on June 14, 2024. Initially, the trial court accepted the stipulations of the mother regarding the unfitness of the respondent. The State requested that the trial court find the minors neglected as to environment injurious and requested a dispositional hearing date set. The trial court asked the mother's counsel and she agreed to the State's request. The trial court then asked respondent's SPD and she informed the court that "my client just requested me that I request a continuance. He has an appointment with a new lawyer on Monday." Respondent spoke and "formally" requested that the SPD "no longer take my case." The trial court acknowledged the request, noted that respondent was entitled to work with a different attorney, but advised that they were there for an adjudication hearing and the hearing had already begun. The court noted the SPD was no longer in a position to object to the findings requested by the State. The record does not reflect that either the respondent father or the SPD attempted, or intended, to object to the court's findings based upon the stipulations including the stipulations made by the respondent. As a result, the court entered the adjudication that the minor children were neglected and abused. The court then discharged the SPD.

¶ 11    Respondent appeared without counsel at the July 11, 2024, dispositional hearing. He informed the court that the attorney he wished to use would not be willing to work pro bono. He asked the trial court for a new SPD and the court instructed him to fill out a new financial affidavit. The court continued the hearing. On July 25, 2024, the trial court appointed a new SPD for respondent and scheduled the disposition hearing.

¶ 12    The trial court held the dispositional hearing for S.J.-U. and T.J.-U. on August 16, 2024. The State presented a DCFS report and family service plan to the court. The State relied on these as its evidence. All other parties, including respondent's new SPD, stipulated to the evidence. The State asked that the trial court find respondent unfit and unable. The State also asked that the court

to find respondent must continue to comply with recommended services, including stable income and housing, substance abuse treatment, sex offender evaluation and other related services. The State further asked the court to find that the service plan is appropriate and that the permanency goal of the minors returning home within twelve months was appropriate, and that custody and guardianship remain with DCFS. Respondent's attorney objected without argument. The trial court found respondent an unfit and unable parent and informed him that it was a final order that could be appealed. This appeal timely followed.

¶ 13                                    C. *Anders* Motion

¶ 14     The trial court appointed counsel to represent respondent on appeal. Appellate counsel filed a motion to withdraw pursuant to *Anders* and *Alexa J.* The clerk of this court also issued an order notifying respondent of the motion and allowing him 30 days to respond. The 30-day period has passed, and respondent has not filed a response.

¶ 15                                    II. ANALYSIS

¶ 16     In support of her motion to withdraw, appellate counsel reviewed the record and closely examined each of the hearings for constitutional, procedural, or evidentiary issues that would constitute a basis for an appellate challenge. As summarized in her motion, appellate counsel examined a potential challenge to due process when the trial court continued the adjudication hearing after Respondent had requested that he no longer be represented by his counsel.

¶ 17     We note that the trial court, trial counsel, and appellate counsel rely on some arguments, terminology, and authority that are more representative of the standards used in hearings to involuntarily terminate parental rights. While this confusion is understandable as adjudicatory and dispositional hearings are part of that process, this is not a case that involves the termination of parental rights. This is an important distinction as respondent has not had his rights terminated,

but he has been given fair notice of what he must do to retain his rights to his children. This confusion within the *Anders* brief will not change our analysis of the trial court's findings and the underlying *Anders* motion.

¶ 18    The Juvenile Court Act governs the proceedings in which minors may be removed from the care and custody of their parents, made wards of the court, and if necessary, have their parental rights terminated. 705 ILCS 405/1-1 *et seq* (West 2022). In an adjudicatory hearing, the court considers whether a minor child is abused, neglected, or dependent. 705 ILCS 405/18(1) (West 2022). A minor may be found neglected or abused if the State proves by a preponderance of the evidence that the environment is injurious to the minor's welfare. 705 ILCS 405/2-3(b) (West 2022); *In re J.B.*, 2018 IL App (1st) 173096, ¶ 37. If the court determines the minor is abused, neglected, or dependent at the adjudicatory hearing, the court then holds a dispositional hearing. *In re Kh.M.*, 2023 IL App (1st) 230261, ¶ 37. "At the dispositional hearing, the trial court hall determine whether it is in the best interests of the minor and the public that he or she be made a ward of the court, and, if the minor is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety, and interests of the minor and the public." *In re Faith S.*, 2019 IL App (1st) 182290, ¶ 78. "The purpose of the dispositional hearing is usually not to terminate parental rights but 'to decide what further actions are in the [minor's] best interests' and to 'give the parents fair notice of what they must do to retain their rights to their child.' " *In re Tyianna J.*, 2017 IL App (1st) 162306, ¶ 43 (quoting *In re G.F.H.*, 315 Ill. App. 3d 711, 715 (2000)). On appeal, this court will not disturb a trial court's finding as to neglect unless it is against the manifest weight of the evidence. *In re Edward T.*, 343 Ill. App. 3d 778, 794 (2003). A decision is against the manifest weight of the evidence where the decision is unreasonable. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 19  Under the procedure outlined in *Anders*, counsel's motion must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Counsel is obligated to advocate on behalf of his or her client. *Alexa J.*, 345 Ill. App. 3d at 987. As such, counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Next, counsel must conclude that no viable grounds exist for the appeal. Finally, appellate counsel should include the transcripts from the adjudicatory and best-interest hearings. *Alexa J.*, 345 Ill. App. 3d at 989. In doing so, counsel must review both the finding of unfitness and the best interest determinations. *S.M.*, 314 Ill. App. 3d at 686.

¶ 20  *Alexa J.* demands an accompanying *Anders* brief to "set out *any* irregularities in the trial process or other potential error, which, although in [counsel's] judgment not a basis for appellate relief might *** be meritorious." (Emphasis in original.) *Alexa J.*, 345 Ill. App. 3d at 987 (quoting *In re Brazelton*, 237 Ill.App.3d 269, 271 (1992)). In accordance with *Alexa J.*, counsel identified one potential challenge: did the trial court violate the father's due process rights by not appointing him new counsel at the adjudicatory hearing or continuing the hearing until respondent had new counsel?

¶ 21                                    A. Forfeiture

¶ 22  Appellate counsel notes that respondent did not raise potential due process arguments at the trial court. Generally, such issues must be raised at trial or will be deemed forfeited. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). However, forfeiture is a limitation on the parties and not on the reviewing court. *In re Br.M.*, 2021 IL 125969, ¶ 39. We will generally "relax the forfeiture rule to address a plain error affecting the fundamental fairness of a proceeding, maintain a uniform body of precedent, and reach a just result." *In re Tamera W.*, 2012 IL App (2d) 111131,

¶ 30. For the review of this motion, we will consider the issue of whether respondent was denied due process in the proceedings.

¶ 23                                    B. Due Process

¶ 24    The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV, § 1. The due process clause provides heightened protection against governmental interference with a parent's fundamental rights, but there are instances where such State interference is justified to protect the health, safety, and welfare of children. *Santosky v. Kramer*, 455 U.S. 745, 759 (1982); *In re M.H.*, 196 Ill. 2d 356, 362-363 (2001). Due process is achieved in parental rights hearings by compliance with the Act and fundamental fairness. *D.T.*, 2017 IL App (3d) 170120 ¶ 23. Pursuant to the Act, indigent parents are entitled to representation by an appointed attorney and that attorney "shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental rights proceedings subject to withdrawal, vacating of appointment, or substitution pursuant to Supreme Court Rules or the Code of Civil Procedure." 705 ILCS 405/1-5(1) (West 2022).

¶ 25    When determining what due process requires in proceedings that implicate a fundamental liberty interest, such as the fundamental rights of a parent, three factors must be considered: "(1) the private interest implicated by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail." *In re M.B.*, 2019 IL App (2d) 181008, ¶ 20 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). These *Mathews* factors also apply to due process under the Illinois Constitution and have been applied in cases

involving the termination of parental rights. *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003). A *de novo* standard of review applies in claims of due process violations. *In re J.M.*, 402 IL App (2d) 190806, ¶ 37.

¶ 26                                     1. Private Interest

¶ 27    As to the first *Mathews* factor, there can be little doubt that respondent's fundamental interest in the control, custody, and care of his children is at stake. *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). As this court has stated previously, a parent "clearly ha[s] an important, deep-seated interest in the outcome of the termination proceedings, specifically his interest in maintaining a parental relationship with [his children]." *In re J.M.*, 2020 IL App (2d) 190806, ¶ 43.

¶ 28                               2. Risk of Erroneous Deprivation

¶ 29    With regards to the second *Mathews* factor, it could be argued that respondent's fundamental interest was unrepresented at the adjudicatory hearing, and he was denied counsel at the very moment that he was found to be an unfit and unable parent. But this simplistic overview misses key elements. The trial court appointed respondent an SPD at the shelter care hearing pursuant to the Act. And when respondent requested a second special public defender, the trial court guided him through the process and appointed new counsel. It is not uncommon for trial courts to appoint new counsel in parental termination cases. *In re Willow M.*, 2020 IL App 200237, ¶ 19 n.2. But it is uncommon for a parent to ask for the dismissal of an SPD in the middle of a hearing.

¶ 30    Appellate counsel notes there are cases similar to the immediate matter. In *In re M.B.*, we vacated the trial court's judgment when it dismissed a parent's counsel prior to the unfitness hearing. *M.B.*, 2019 IL App (2d) 181008, ¶ 31. Conversely, in *In re S.P.*, the appellate court

affirmed the trial court's decision to allow counsel to withdraw through an oral motion without Supreme Court Rule 13(c) compliance because the risk to the father's fundamental rights were minimal. *In re S.P.*, 2019 IL App (3d) 180476, ¶ 31. In both cases, the parent had failed to communicate with counsel, was absent from the hearing, and was likely unaware they were without representation.

¶ 31    In the immediate matter, however, respondent was present at all the relevant hearings. He was an active participant in the hearings and the trial court showed patience when respondent's participation erred on the side of becoming *too* active. The SPD represented respondent during each hearing until respondent requested that the court discharge her. Respondent was present at the June 6 hearing and, through counsel, stipulated to the facts in the petition for adjudication. When asked by the trial court, respondent agreed to the stipulations, stated he was entering them freely and voluntarily, and confirmed he was neither forced, coerced, or promised things to elicit his stipulations. Respondent had the benefit of counsel during the June 6 hearing and has the benefit of counsel in the June 14 hearing until he unilaterally asked for his SPD to be discharged. It was not an abuse of due process for the trial court to rely upon respondent's prior voluntary stipulations, given while he was represented by counsel, in finding sufficient evidence of an injurious environment based upon respondent's actions, regardless of whether the respondent decided to discharge his attorney immediately prior to the adjudication of the petition and the conclusion of the proceedings.

¶ 32                                    3. Government Interest

¶ 33    As to the third and final factor from *Mathews*, we recognize that the State has an interest in promoting the welfare of the child and in streamlining the cost and length of the termination proceedings. *In re Brandon L.*, 348 Ill. App. 3d 315, 321-322 (2004). The State's interest in the

welfare of the minor children is obvious. The State's interest in reducing delays in proceedings reflect the cost that such delays impose on the function of the government and the intangible cost to the lives of the minor children. *J.M.*, 2020 IL App (2d) 190806, ¶ 31. Despite this interest, the record reflects that the trial court repeatedly granted continuances in order to make sure both parents were present at the hearings, and both were represented by counsel prior to commencement of the proceedings. When respondent asked for new counsel to serve as SPD, the trial court granted the request and granted a continuance to allow the new counsel to prepare the case. We find this factor, like the other two, weighs against respondent.

¶ 34 Moreover, it could be said that respondent invited any error into the proceedings. And based upon our review of record, any error that respondent injected into the proceedings was harmless error beyond a reasonable doubt. See *People v. Ratliff*, 2024 IL 129356 (discussing that even a structural error may not affect the fundamental fairness of a trial if it is harmless error beyond a reasonable doubt).

¶ 35 While we agree with counsel that there is no viable argument challenging the trial court's holding, we would encourage the trial court to avoid similar situations in the future. There was no prejudice in the immediate matter because of the record of admonishments and statements made by respondent that his stipulations were voluntary and accurate left nothing remaining other than the court's completion of the proceeding via making findings of facts and the adjudication of the petition. Further the issue was not subsequently revisited by the new SPD or respondent. "[W]hen balancing a parent's interests and right to due process against the interests favoring a prompt disposition, a trial court must cautiously observe the relevant procedural requirements because a disposition that must be reversed on appeal serves neither interest." *In re J.P.*, 316 Ill. App. 3d 652, 663 (2000). In the future, it would be preferable for the trial court either to continue the

matter until new counsel is present or require a clear stipulation from the party that the party understands that he is waiving the presence of his attorney from the discharge until the replacement of counsel.

¶ 36 Our review of the record indicated that respondent voluntarily chose to ask the trial court to dismiss his counsel during an adjudicatory hearing. As such, the court was not obligated to delay nor suspend the proceedings waiting for him to secure new counsel. Considering the facts and circumstances of this case, we conclude that the court finding an injurious environment caused by respondent's conduct, based upon his stipulations while represented by counsel, was not a violation of his procedural due process rights due to the request to discharge his attorney immediately thereafter. Thus, we agree with appellate counsel that no viable argument challenging the court's fitness finding could be raised.

¶ 37                                 III. CONCLUSION

¶ 38 After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. We grant the motion to withdraw and affirm the judgment of the circuit court of McHenry County.

¶ 39 Motion granted; affirmed.