2019 IL App (2d) 190595-U
No. 2-19-0595
Order filed November 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re M.H., X.H., K.H., M.D., and Z.D., Minors, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County |
| | ) | |
| | ) | Nos. 17-JA-309 |
| | ) | 17-JA-310 |
| | ) | 17-JA-311 |
| | ) | 17-JA-312 |
| | ) | 17-JA-313 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Francis M. Martinez, |
| Appellee, v. Latrice D., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Jorgensen and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*: Brief discharge of respondent's attorney did not prejudice respondent; respondent failed to show she was prejudiced by counsel's failure to object to certain material admitted during his brief absence; trial court's judgment is not contrary to the manifest weight of the evidence; and court would not adopt *per se* rule requiring termination proceedings to be heard by a different judge than the one who presided over earlier proceedings.

¶ 2                                    I. INTRODUCTION

¶ 3    Respondent, Latrice D., appeals orders of the circuit court of Winnebago County finding her an unfit parent and terminating her parental rights to the minors, M.H., X.H., K.H., M.D., and Z.D.  On appeal, respondent contends that (1) she was denied due process when the trial court vacated the appointment of her counsel; (2) she was denied the effective assistance of counsel; (3) the State did not meet its burden of proving her unfit as all evidence admitted by the trial court was actually inadmissible; and (4) her due process rights were violated when the trial judge who presided over proceedings leading up to the unfitness hearing also presided over the unfitness hearing.  She does not challenge the best-interests determination.  For the reasons that follow, we affirm.

¶ 4    Before proceeding further, we note that the State has filed a motion to supplement the record with a transcript of the testimony of Dr. Valerie Bouchard from a proceeding involving a sibling of the minors at issue in this case.  We ordered the motion taken with the case.  That motion is granted.  We note that respondent has filed a response to the State's motion, arguing that it should be denied because the transcript at issue "was never before the trial court, or provided to appellant's trial counsel."  Apparently, the transcript was never actually made part of the record after the trial court took judicial notice of the witness's testimony.  Respondent's argument proves too much.  If we did not grant the State's motion, then it is hard to see how he could show prejudice from the trial court taking judicial notice of this testimony.  Of course, it is respondent's burden to show prejudice.  It is also respondent's burden—as the appellant—to present a sufficiently complete record to facilitate review, and any omissions are construed against the appellant.  *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).  If we were to deny the State's motion, we would have to presume that respondent suffered no meaningful prejudice from the trial court noticing that testimony.

¶ 5                                   II. BACKGROUND

¶ 6     Respondent is the biological mother of the five minors at issue in this case. Her parental rights to a sixth minor, D.D., had previously been terminated in a separate case. The biological fathers are not involved in this appeal. On September 28, 2017, the state filed petitions pertaining to all five minors alleging neglect on as many as 12 counts for each minor (the parties are aware of the details and we will not repeat them here). The incident that precipitated the filing of the petitions occurred two days earlier. On that day, M.H. and K.H (aged six and seven at the time, respectively) were injured in a car accident when a car operated by respondent's paramour (Albert) was involved in an accident. They were unrestrained in the back seat. M.H. suffered a broken leg, and K.H.'s skull was fractured. The children were taken to Rockford Memorial Hospital. An investigator from the Department of Children and Family Services (DCFS) was present at the hospital. Respondent admitted that she asked Albert to drive the children to school, knowing that he could not legally drive. Both respondent and Albert admitted that the children were not in car seats.

¶ 7     Following various preliminary proceedings, including an adjudicatory hearing and a permanency hearing, the State moved to terminate respondent's parental rights. The petition alleged, as to respondent, that she failed to protect the minors from conditions injurious to their welfare and that she had "an inability to discharge parental responsibilities" believed to "extend beyond a reasonable time." A fitness hearing commenced on March 1, 2019. Respondent did not appear. The trial court, without a written motion being filed or notice being provided to respondent, vacated her attorney's appointment (however, the trial court permitted counsel to finish "litigating" a motion he had previously filed). The attorney left the courtroom. The State then requested the trial court take judicial notice of certain exhibits, including the "indicated

packet" and the testimony of Dr. Bouchard, who was a witness in the case involving D.D. The trial court granted the State's request. Shortly thereafter, while the parties were setting the next hearing, respondent appeared. The trial court immediately rescinded the order vacating respondent's counsel's appointment (the written order from this date shows a statement vacating the appointment crossed out). The trial court asked an attorney (who was present on behalf of some of the minors' father and not involved in this appeal) to inform respondent's counsel that they had taken some documentary evidence in his absence.

¶ 8    The documentary evidence included the testimony of Dr. Bouchard, given in proceedings concerning D.D. before the same trial judge presiding in this case. Bouchard is a licensed clinical psychologist. She completed a psychological evaluation and parenting capacity examination of respondent in 2016 and 2017, respectively. Bouchard measured respondent's IQ as 65, which she characterized as "extremely low range." Reading and math skills ranged "in grade level from one to three." She could not "take information that she learned in one context and apply it in another context." Thus, parenting classes, to be useful to respondent, would have to be "hands-on." Bouchard recommended respondent be referred to an agency that works with "intellectually disabled individuals." Emotionally, respondent was immature, lacked self-assurance, exhibited significant dependency and feelings of helplessness, and also showed "indications of aggression and hostility."

¶ 9    Respondent did not show a complete understanding of what she needed to do for D.D. to be returned home. Bouchard opined that respondent could not "effectively, safely, and appropriately manage the care of the minor." Bouchard also noted "some mild depressive functioning." Bouchard observed respondent with all six of her children. She described it as "a very chaotic situation for the most part." Respondent did try to use some to the techniques she had

been shown to try "to structure and organize the children." The children did not comply and "each of them kind of did what they wanted to do." Bouchard added, "[T]here was a lot of conflict between the children that wasn't successfully addressed." Moreover, D.D. was functioning in a parental role. Bouchard concluded that, even with a parent coach and family therapy, her "prognosis was poor because there were too many limitations and things that could not be easily corrected, if it [*sic*] could be corrected at all."

¶ 10    On cross-examination, Bouchard clarified that the psychological assessment took place in June 2016. She agreed that respondent was making efforts to comply with the requirements asked of her by DCFS. Bouchard explained that she did not question respondent's desire to comply with services; rather, Bouchard's concern was her ability to do so. Bouchard opined that it would take significant repetition—perhaps over a period of years—for respondent to learn the skills she needed to parent the minors, and, even then, she might not be successful.

¶ 11    After a status hearing on April 24, 2017, at which respondent's counsel was present, the next hearing occurred on April 25, 2017. The State rested on the documentary evidence it had presented previously. Respondent then presented the testimony of three witnesses.

¶ 12    Respondent first called Krista Vaccarello, who was familiar with respondent from the time Vaccarello was a supervisor with Children's Home and Aid. Respondent had a "parenting capacity completed in 2016." She also was given a psychological assessment. In overruling a hearsay objection, the trial court noted that the two assessments were already part of the record. Vaccarello did not recall the results of either one. She agreed that one report stated that respondent had "not demonstrated an ability to effectively and safely parent her children due to cognitive functioning. Respondent was "expected to engage in individual counseling." At some point, the counselor respondent was working with recommended that a counselor with experience working with

individuals with intellectual disabilities work with respondent. Vaccarello did not recall such a counselor being assigned to respondent.

¶ 13 Respondent also called Melvin Spearman, who is respondent's stepfather. He has known respondent since she was five years old. He has observed respondent parent the minors on a daily basis from 2016 to 2018. He testified that the children's surroundings were safe and that respondent behaved appropriately toward them. He never noted the minors to be "unkempt or dirty or in need of assistance." They had a strong bond with respondent. On cross-examination, Spearman agreed that the minors were removed from respondent's custody in September 2017.

¶ 14 Finally, respondent called Phillip Goudreau, a caseworker at Children's Home and Aid. He has been the minors' caseworker since January 2019. He had met respondent on two occasions. Respondent did not show up for an appointment after Goudreau was first assigned to the minors, and he first met her at an earlier court date. She told him that she could not receive incoming telephone calls; therefore, he explained to her that it was incumbent upon her to contact him. He did not see her again until the trial. Respondent was unsuccessfully discharged from domestic violence services due to absences.

¶ 15 On June 5, 2019, the trial court found respondent unfit. The trial court first considered the count alleging that she was unfit for failing to protect the minors from conditions injurious to their welfare. It noted that the indicated report stated that respondent "crashed her vehicle with the minors in the car and no child restraints." Further, she "allowed another individual to transport the minors without child restraints who also crashed the car" * * * result[ing] in substantial injuries to two of the children." The trial court observed that the minors' sibling, D.D., had been previously removed for "educational neglect and other issues that were present." The DCFS investigation found the minors to be in a filthy and grossly unkept [*sic*] condition." The trial court then found

that the totality of the circumstances show that respondent has failed to protect the minors from a "substantially dangerous environment." The trial court further found respondent unfit as to the second count. Here, it expressly relied on the testimony of Dr. Bouchard. Bouchard opined that respondent does not have "the abilities to digest and incorporate information." While she "can be instructed in limited doses," she does not "retain most information." The trial court found that a "specialized therapist" would not "materially impact" respondent's parenting skills. Proceedings then advanced to the best-interests phase, and the trial court determined that it was in the minors' best interests that respondent's parental rights be terminated. This appeal followed.

¶ 16                                III. ANALYSIS

¶ 17    Respondent raises four arguments. First, she contends that the trial court erred in vacating her attorney's appointment on the first day of the fitness hearing when she did not initially appear. Respondent contends that evidence was taken improperly in her attorney's absence. The second concerns the effectiveness of her attorney's representation of her regarding the trial court's decision to vacate his appointment and his failure to object to the evidence taken during his absence after he returned. The third argument is that the trial court's decision on fitness is contrary to the manifest weight of the evidence because the State offered no admissible evidence that she was unfit. This argument is premised on the evidence taken during her attorney's absence being inadmissible. Fourth and finally, she argues that due process requires a different judge to preside over her fitness hearing than the one that presided over earlier hearings as such involvement would inevitably prejudice the judge against her.

¶ 18            A. VACATING RESPONDENT'S REPRESENTATION

¶ 19    Respondent asserts that the trial court erred in vacating her attorney's appointment and that the representation she received from her attorney was ineffective. She contends that this violated

her right to due process. See *In re M.B.*, 2019 IL App (2d) 181008, ¶ 23. We review an alleged due process violation *de novo*. *In re Torski C.*, 395 Ill. App. 3d 1010, 1017 (2009).

¶ 20    On the day the fitness hearing commenced (March 1, 2019), respondent was not initially present. The trial court vacated her attorney's appointment, stating that "it appears that [respondent] has essentially abdicated her desire to reunify." The trial court noted that respondent had not maintained contact with either her attorney or her caseworkers. The trial court added that respondent's attorney could finish "litigating" a motion he had previously filed. After respondent's attorney left, the hearing continued. A caseworker subpoenaed by the State failed to appear. The State asked the trial court to take judicial notice of a number of documents (most of which pertained to two of the minors' biological fathers), only one of which—the indicated packet—was relevant to respondent. The State also asked the trial court to take judicial notice of the testimony of Dr. Bouchard, which was offered in the case involving D.D. Finally, it asked that the trial court notice the neglect petition, orders of adjudication and disposition, and an order following a permanency review. No one objected to the trial court taking judicial notice of these documents (neither respondent nor her attorney were present at this point), and the trial court did so. Shortly thereafter, before the proceeding concluded, respondent appeared, and the trial court struck its order vacating her attorney's appointment. The trial court instructed another attorney, who was present on behalf of one of the fathers, to instruct respondent's attorney that he was "not vacated" and that they had taken some documentary evidence in his absence.

¶ 21    Proceedings resumed—after an intervening status hearing—on April 25, 2019. Initially, the court addressed a motion to reconsider its decision on respondent's previously denied motion for a new parenting-capacity examination. The trial court held that it lacked the authority to order such an examination. The trial court then inquired whether the State had any more evidence to

present, and the State did not. The State reiterated that it had submitted six exhibits at the previous hearing, and the court had taken judicial notice of them. Respondent's counsel was present. No objection was raised.

¶ 22    Respondent contends that it was improper for the trial court to vacate her attorney's appointment under the circumstances. She notes that no written motion to withdraw had been filed and that she received no notice that her attorney's appointment was about to be vacated. Moreover, she was not given an opportunity to respond or obtain another attorney. This, she contends, was improper. See Illinois Supreme Court Rule 13(c) (eff. July 1, 2017); *M.B.*, 2019 IL App (2d) 181008, ¶ 23. The State agrees, and so do we. However, the State counters that respondent was not prejudiced by her attorney's brief absence, so no due process violation occurred. See *In re S.P.*, 2019 IL App (3d) 180476, ¶ 39.

¶ 23    We agree with the State. In *S.P.*, 2019 IL App (3d) 180476, ¶ 40, as in this case, the respondent argued that his due process rights were violated when his attorney was allowed to withdraw "without filing a written motion to withdraw and without providing him with notice that she would be seeking to withdraw." Also, as here, the State conceded the error. *Id*. The *S.P.* court noted that Illinois Supreme Court Rule 13 had not been complied with. *Id*. ¶ 43. However, the court further held that "the risk that respondent was erroneously deprived of his fundamental right to the care, custody, and control of S.P. as the result of the trial court error in allowing his counsel to withdraw without compliance with Rule 13 was minimal." *Id*. ¶ 44. It relied on the following in support of its decision:

> "[T]he record shows that respondent had appeared at the adjudication and dispositional hearings so that he was aware of the proceedings; respondent had received a service plan; respondent had been admonished to comply with the terms of the services plan or risk

termination of his parental rights; respondent had failed to make himself available to the caseworker; respondent had failed to remain in contact with his attorney; during the time his counsel had withdrawn from representing him, respondent was incarcerated and there is no indication that respondent had attempted to contact counsel for assistance or advice regarding making progress toward the return home of S.P. or for any other reason at all; and during the time respondent was without counsel, the only proceedings that took place during that time were continuances for a status on the mother's progress in obtaining a parenting assessment." *Id*.

Similarly, respondent here failed to maintain contact with her attorney and caseworker, though she had attended several hearings and was aware of the proceedings. Further, while in *S.P.* the only proceeding that took place in the absence of counsel was a status hearing (*Id*.), the only thing that occurred in this case was the admission of documentary evidence, which respondent's counsel could have easily reviewed and objected to. Counsel did not miss live testimony. The *S.P.* court next observed that "counsel was reappointed, and respondent was fully represented at the termination of parental rights hearing." *Id*. Such was the case here, with the exception of counsel's brief and easily remedied absence while judicial notice was taken of documentary evidence.

¶ 24    The *S.P.* court reasoned, "Based on this record, we conclude that respondent was not denied due process as the result of the trial court allowing his counsel to withdraw without first complying with Rule 13." *Id*. We are of the same opinion here. Counsel's brief absence during which nothing occurred but the notice of easily reviewable documentary evidence did not create a substantial risk that respondent would be erroneously denied her interest in parenting the minors. This finding has great relevance to establishing a violation of procedural due process.

¶ 25    Respondent does not mention the seminal test from *Matthews v. Eldridge*, 424 U.S. 319 (1976), for analyzing whether a procedural due process violation has occurred. That case has been applied in cases involving the termination of parental rights. See *In re Andrea F.*, 208 Ill. 2d 148, 165 (2003), and it is controlling here. Pursuant to it, one must consider the following: "(1) the private interest implicated by the official action; (2) the risk of an erroneous deprivation of that interest through the proceedings used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail." *Id.* Under the first factor, respondent's interest is undeniably high. *Id.* at 166. However, the minors' interests in a stable home are also relevant. *In re D.T.*, 212 Ill. 2d 347, 363 (2004). Further, the burden of providing additional procedures does not appear to be unduly cumbersome, so the government's interest does not appear to be particularly outcome determinative here. As discussed above, we see little risk of counsel's brief absence leading to an erroneous deprivation. Absent such a risk, respondent has not established that a procedural due process violation occurred here.

¶ 26                        B. EFFECTIVE ASSISTANCE OF COUNSEL

¶ 27    Respondent contends she received ineffective assistance from her trial attorney. Specifically, respondent asserts that counsel was ineffective by failing to argue "against the court vacating his appointment without notice and motion required by Rule 13; by leaving the courtroom during the termination trial on March 1, 2019 without having been given proper leave to withdraw; and by failing to object to the [S]tate's use at trial of evidence of which the [trial] court took judicial notice after he had left the courtroom on March 1, 2019, and without a proper foundation having been laid by the [S]tate."

¶ 28     A respondent in a termination proceeding has a statutory right to the effective assistance of counsel. *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 41. We assess counsel's performance under such circumstances using the familiar criteria articulated in *Strickland v. Washington*, 466 U.S. 668, 688 (1984): A respondent must show that counsel's performance was objectively unreasonable and that this substandard representation created a reasonable probability that the outcome of the proceeding would have been different. See *Ca. B.*, 2019 IL App (1st) 181024, ¶ 42. A failure to satisfy either prong precludes an ineffectiveness finding. *Id.* Thus, "we may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance." *People v. Hale*, 2013 IL 113140, ¶ 17. Though questions of fact are reviewed using the manifest-weight standard, the ultimate question of whether counsel was ineffective is reviewed *de novo*. *People v. Manoharan*, 394 Ill. App. 3d 762, 769 (2009).

¶ 29     We find unpersuasive respondent's first two arguments regarding ineffectiveness. As the State concedes and we agree, the trial court erred in vacating respondent's counsel's appointment without complying with Supreme Court Rule 13, and counsel leaving the courtroom under such circumstances was a result of that decision. The consequence of this error was that counsel was briefly absent, particularly when the trial court took judicial notice of certain documents. Nevertheless, we perceive no reasonable probability that the proceedings coming to a different outcome had counsel not left the courtroom. Counsel could have objected to the documentary evidence after he returned and was in no worse of a position to do so because of his absence. This is not prejudice. *Cf. In re S.P.*, 2019 IL App (3d) 180476, ¶ 44 (finding, in analyzing a potential due process violation, minimal risk of an erroneous deprivation where, *inter alia*, "during the time respondent was without counsel, the only proceedings that took place during that time were

continuances for a status on the mother's progress in obtaining a parenting assessment"). As prejudice is an essential element of an ineffectiveness claim (*Ca. B.*, 2019 IL App (1st) 181024, ¶ 42), respondent's first two arguments must fail. Though counsel could have addressed the documentary evidence of which the trial court took judicial notice when he returned, he did not do so, which brings us to respondent's next argument.

¶ 30    Respondent's final contention on this point is that trial counsel should have objected to the material of which the trial court took judicial notice when he had an opportunity to do so. We will address the prejudice prong first. See *Hale*, 2013 IL 113140, ¶ 17. Respondent argues, "As to prejudice, the *only* evidence against [respondent] was that of which judicial notice was taken after her counsel left the courtroom." (Emphasis in original.) Respondent argues that the State did not lay a proper foundation for this evidence nor did it identify which portions of the documents it intended to rely on (we are concerned with the indicated packet and Dr. Bouchard's testimony here). Moreover, these documents were submitted without the State being required to identify what portions of them it was relying on. Furthermore, respondent argues that the trial court should not have taken judicial notice of Dr. Bouchard's testimony in the proceeding regarding D.D. because Bouchard could have been called as a witness.

¶ 31    We will first consider the indicated packet. Initially, we note that in *In re J.P.*, 316 Ill. App. 3d 652, 663 (2000), we previously held: "Wholesale judicial notice of all matters occurring prior to the unfitness hearing is unnecessary and inappropriate, and a trial court should only take judicial notice of those portions of the underlying court files that have been proffered by the State and to which the respondent is given an opportunity to object." We note that the indicated packet relevant to respondent was approximately 100 pages long.

¶ 32    Nevertheless, respondent does not identify any specific objectionable material, so assessing actual prejudice is difficult at best.  Prejudice cannot be based on speculation.  *People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice."); see also *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 2016 ("[S]atisfying the prejudice prong of *Strickland* requires a showing of actual prejudice and not simply speculation that the defendant may have been prejudiced."); *People v. Brown*, 2015 IL App (1st) 122940, ¶ 47.  Here, had respondent's counsel interposed a foundational objection, there is no indication that the State could not have provided an adequate foundation.  See *People v. Diaz*, 377 Ill. App. 3d 339, 350 (2007) ("This court cannot say that there is a reasonable probability of a different outcome because, even if defense counsel had opposed the admission of the HGN test, it is likely that the State would have immediately cured the foundation deficiency by asking more questions concerning Tyler's knowledge and experience with the HGN test.").  Failing to interpose a futile objection is not ineffectiveness.  *People v. Edwards*, 195 Ill. 2d 142, 165 (2001) ("Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless objection.").  Quite simply, respondent does not identify what portions of the indicated packet could have been successfully excluded.

¶ 33    Respondent contends, in her reply brief, that it would have been too onerous for her to address, on appeal "all of the hundreds of hearsay and multilevel hearsay statements in the Indicated Packet alone" and "her brief would never be able to comply with" applicable supreme court rules on the length of briefs."  First, the trial court's ruling, particularly on the first count, was rather narrow.  Respondent makes no attempt to establish that anything relied on by the trial court could have been excluded from evidence.  Second, respondent would not have had to address "hundreds of hearsay and multilevel hearsay statements."  Rather, it likely would have sufficed

had respondent identified some key portions of the documents that could have been excluded such that there was a reasonable probability that the outcome of the proceedings would have been different. This is not an inappropriate burden to place on respondent, who, as the appellant, bears the burden of affirmatively establishing error from the record. *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008).

¶ 34 Further, we find respondent's contention that her counsel was not given an opportunity to object to this material when he resumed representation unpersuasive in light of the fact that respondent fails to identify at any point where her attorney attempted to raise such an objection and was thwarted in doing so. Respondent's intimation in her reply brief that counsel was unaware that the trial court took judicial notice of any documents is belied by the record. For example, on the second day of the fitness hearing, with respondent's attorney present, the State, before resting, stated that on the last court date, the trial court took judicial notice of six exhibits offered by the State. Respondent's counsel voiced no objection or otherwise inquired about the material at issue here. We also note that section 2-18(4)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-18(4)(b) (West 2018)) states, "Any indicated report filed pursuant to the Abused and Neglected Child Reporting Act shall be admissible in evidence." Subsection 2-18(4)(a) of that statute makes the alleged hearsay nature of the document a matter of weight rather than admissibility. See 705 ILCS 405/2-18(4)(a) (West 2018).

¶ 35 More problematic, however, is the testimony of Dr. Bouchard. Generally, testimony given in a previous proceeding is hearsay. *People v. Mitchell*, 2011 IL App (1st) 083143, ¶ 103, n.2.; see also *People v. Radovick*, 275 Ill. App. 3d 809, 820 (1995). Illinois Rule of Evidence 804(b)(1) (eff. September 28, 2018) provides an exception to the hearsay rule regarding the use of former testimony. To apply, it requires that the declarant be unavailable to testify. *Id*. Respondent calls

our attention to *People v. Brown*, 177 Ill. App. 3d 671, 673 (1988), which states that testimony of a police officer at a prior hearing should not have been admitted where there was "no indication in the record why the arresting officer was not present." *Brown* cites *In re Gonder*, 149 Ill. App. 3d 627, 629 (1986), which holds as follows:

> "In taking judicial notice of the record of prior proceedings in this cause, the circuit court apparently sought to expedite matters and eliminate the need to recall nonparty witnesses. However, this procedure also skirted the normal rule that prior testimony is hearsay that may be used as substantive evidence only when the witness is unavailable by death, illness or other such cause."

Moreover, the record in this case indicates that Dr. Bouchard was under subpoena and thus could have been called to testify. As such, it appears that respondent's attorney could have interposed a meritorious objection to this evidence. Parenthetically, we note that the decision not to object and require live testimony from Bouchard could well have been trial strategy, as counsel could have concluded that requiring her to appear and give live testimony would enhance her credibility and persuasiveness. See *People v. Perry*, 224 Ill. 2d 312, 344 (2007) ("We agree with the appellate court that it is entirely likely counsel chose to let these statements pass rather than object and run the risk of the declarants themselves being called to testify.").

¶ 36    In any event, turning to the question of prejudice, we first reiterate that respondent was found unfit on two grounds: that respondent failed to protect the minors from conditions injurious to their welfare and that she had "an inability to discharge parental responsibilities" believed to "extend beyond a reasonable time." Where more than one count of unfitness has been found, a reviewing court must affirm if any one of such finding is not contrary to the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004). Bouchard's testimony bears

obvious relevance to the second count; however, this is not the case regarding the first count. Regarding the first count, the trial court relied on respondent's repeated failure to properly transport the minors, which resulted in "substantial injuries" to two of them. While it noted D.D. had been removed, it never mentioned Bouchard's testimony. It also noted that a DCFS investigation found the minors to be in a filthy condition. That respondent's attorney did not object to the fact that the trial court had taken judicial notice of Bouchard's testimony did not, therefore, prejudice respondent as to the first count. As such, the proceedings would not have come to a different result.

¶ 37    In sum, we hold that respondent failed to establish that she received ineffective assistance of counsel with respect to the count alleging she is unfit based on her failure to protect the minors from conditions injurious to their welfare.

¶ 38                    C. SUFFICIENCY OF THE EVIDENCE

¶ 39    Respondent next contends that the trial court's decision that she is unfit is contrary to the manifest weight of the evidence. Respondent contends that there was no admissible evidence before the trial court. In light of our holding regarding ineffective assistance, we limit our analysis to the first count of which respondent was found unfit—the failure to protect the minors from conditions injurious to their welfare.

¶ 40    This argument is premised on the indicated packet being excluded based on unspecified foundational and hearsay objections. As noted, respondent has not identified what material she is relying on here with specificity. As respondent has not established that any portion of the indicated packet would have been excluded, we cannot accept her assertion that there is no evidence supporting the State's case. The trial court's ruling on the first count was rather narrow, focusing primarily on respondent's repeated exposure of the minors to being transported in a vehicle in an

unsafe manner (in addition to the incident where two children were injured, the indicated packet documents numerous other occasions where the minors were transported in an unsafe manner, "unrestrained without belts or car seats," including a number of citations). It also noted that they had been found in a filthy condition. Respondent makes no attempt to establish that the State could not have laid a foundation for such evidence or that, if it had, respondent could have successfully interposed additional objections.

¶ 41    Having rejected the essential premise underlying respondent's argument, we cannot agree that the trial court's decision is against the manifest weight of the evidence.

¶ 42                                    D. JUDICIAL BIAS

¶ 43    Respondent's final argument is that given the nature of the proceedings in cases such as these, a new judge should presided over the fitness hearing rather than the judge that presided over the proceedings leading up to the fitness hearing. Respondent contends that by the time of the fitness hearing, the judge has preside over numerous hearings and heard a vast amount of evidence, some of which would not be admissible in a fitness hearing. Respondent asserts that judges often make rulings in permanency hearings based entirely on inadmissible evidence. Respondent reasons, "Once a judge has ordered a change from return home to termination of parental rights, it is difficult to see how that judge can then forget the often years of conferences and proceedings, and hundreds of pages of reports, on which he [or she] based that goal change, despite his best attempts to do so."

¶ 44    Respondent's appellate counsel concedes that he has "found no case on point, the closest being the concurrence in *In re A.T.*, 197 Ill. App. 3d 821, 835 (1990) (Steigmann, J. concurring). There, Justice Steigmann wrote:

"If neither DCFS nor the appropriate State's Attorney's office acts promptly to seek to terminate parental rights when that action is called for, then, as a last resort, the trial court must alert these agencies to the need to do so. Once the trial court makes its views known, I seriously doubt that it would ever need to take the extraordinary (and probably unwise) step of *directing* the State's Attorney to file a petition to terminate parental rights, assuming that the court even had the authority to do so under section 2–13(1) of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1987, ch. 37, par. 802–13(1)). Of course, when a judge has indicated there is a need for a petition to terminate parental rights to be filed, that judge must thereafter recuse himself or herself from any proceedings on that petition once it is filed." *Id.*

Respondent focusses on the last sentence, attempting to analogize it to a trial court changing the goal from return home to substitute care pending court determination of termination of parental rights. The situation confronting Justice Steigmann was not particularly similar to the situation in this case (and cases like this one). Justice Steigmann was contemplating *sua sponte* action by a trial court; conversely, in this case, the trial court merely granted a request by the State to change the minors' goals. In the former circumstance, the trial judge is, in essence, acting as an advocate for the minor; in the latter, the judge retains his neutral role and passes upon a request by a party. As such, *A.T.* is distinguishable and of limited relevance here.

¶ 45    Moreover, though we too have been unable to uncover a case directly on point, the case law that does exist does not favor respondent's position. For instance, a trial judge is presumed to consider only admissible evidence and disregard inadmissible evidence. *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). This presumption is rebutted only "if it affirmatively appears from the record that improper evidence was considered by the court." *People v. Dobbs*, 353 Ill. App. 3d 817, 824

(2004). Further, Illinois Supreme Court Rule 903 (eff. March 8, 2016) expresses a preference for the same judge to hear all proceedings involving child custody and the division of parental responsibilities: "Whenever possible and appropriate, all child custody and allocation of parental responsibilities proceedings relating to an individual child shall be conducted by a single judge." Similarly, "the same judge who presided over the defendant's trial should hear his post-conviction petition, unless it is shown that the defendant would be substantially prejudiced," which would, obviously, be after a guilty verdict. *People v. Hall*, 157 Ill. 2d 324, 331 (1993). The *per se* rule advocated by respondent would be contrary to the supreme court's admonition that "[t]o conclude that a judge is disqualified because of prejudice is not, of course, a judgment to be lightly made." *People v. Vance*, 76 Ill. 2d 171, 179 (1979).

¶ 46    In short, we decline to announce such a rule based only on a special concurrence that is only somewhat analogous.

¶ 47                              IV. CONCLUSION

¶ 48    In light of the foregoing, the judgment of the circuit court of Winnebago County is affirmed.

¶ 49    Affirmed.